EMPLOYEES and JUDGE OF THE SECOND JUDICIAL DISTRICT
COURT v HILLSDALE COUNTY

BOARD OF COMMISSIONERS OF CHEBOYGAN COUNTY v
CHEBOYGAN CIRCUIT JUDGE

Docket Nos. 73180, 73952. Argued March 6, 1985 (Calendar Nos. 12, 13).—Decided December 2, 1985.

The employees of the Second Judicial District Court, Second Division, successfully litigated their right to withdraw from the Hillsdale County retirement-pension system. Under the system, employees of the county paid three percent of their wages into the retirement fund and the county paid four percent of the gross wages of all nonunion employees. Thereafter, the employees of the court reached an agreement with the court providing that the four-percent benefit otherwise paid by the county into the fund would be paid directly to the employees. After the court submitted the agreement to the county as part of its 1983 budget proposal, the county deleted the four-percent wage increase. In response, the court issued an administrative order directing the county to pay the increase. Upon the county's refusal, the employees and judge of the court brought an action in the Hillsdale Circuit Court against the county, seeking to compel the county to fulfill the terms of the compensation agreement. The county filed a counterclaim. The court, Kenneth B. Glaser, Jr., J., found that payment of the increase would have no adverse effect on the fiscal affairs of the county and that failure to pay the increase would have no adverse effect on the operation of the court. However, it concluded that it was the burden of the county to show by a fair preponder-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 7] Am Jur 2d, Public Officers and Employees §§ 431 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Public Officers and Employees.
[2, 4, 6] Am Jur 2d, Public Funds §§ 36 et seq.
  Inherent power of court to compel appropriation of funds for
  judicial purposes. 59 ALR3d 569.
[5] Am Jur 2d, Costs §§ 72 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Attorneys' Fees.

ance of the evidence that the administrative order was unreasonable, and, finding that the order was reasonable, ordered the county to comply with the administrative order. The defendant appealed to the Court of Appeals (Docket No. 74846) and was granted leave to appeal to the Supreme Court prior to decision by the Court of Appeals.

The judge of the Cheboygan Circuit Court issued administrative orders directing the Cheboygan County Clerk and the County Treasurer to pay the wages of and provide benefits for a certain part-time employee in amounts greater than those provided for other county-funded part-time employees, and requiring the clerk and the treasurer to refrain from any efforts to reduce the court budget. The order stated that it was enforceable through the court's contempt power. The Cheboygan County Board of Commissioners, the county clerk, and the county treasurer brought a complaint for superintending control in the Supreme Court. The Supreme Court directed the parties to include among the issues briefed: (1) whether a circuit court may direct county commissioners to appropriate funds for court operation by means of an administrative order, (2) whether the circuit judge may employ outside counsel to defend the court's interest in these proceedings, and (3) whether counsel's fees are reasonable and necessary and to submit the case together with *Hillsdale County.*

In an opinion by Justice BOYLE, joined by Justices LEVIN, BRICKLEY, and CAVANAGH, the Supreme Court *held:*

A court has the authority to set salaries which, if reasonable and within the appropriations of the local funding unit, must be paid by the unit. Local funding units must provide adequate funding for the courts to fulfill their statutorily mandated functions. MCR 8.112(B) does not provide authority for a court to compel expenditures by local funding units through administrative orders. Where a court and a local funding unit are unable to agree, and the court seeks funding in excess of appropriations, the court may institute suit and must bear the burden of proving that the appropriation it seeks is necessary to the performance of a statutorily mandated function or functions.

1. MCL 600.8271; MSA 27A.8271 authorizes the district court to appoint employees and to fix their compensation. The authorization represents a legislative intent to place such determinations under control of the courts. The Legislature did not intend, however, that the funding unit be limited to approving the amounts fixed by the courts. Compensation must fall within the appropriations of the local funding unit. Where a court

determines that additional expenditures beyond appropriations are required to fulfill a statutory function, it may institute suit and bear the burden of proving that the expenditure is necessary to fulfill the function. The restriction that compensation for employees be fixed within appropriations set by the local funding unit, cannot be read to defeat a claim that an amount in excess of appropriations is necessary to fulfill a function mandated by the Legislature. To do so would permit the legislative intent to be frustrated by a funding unit's failure to provide necessary funds. Where the Legislature has by statute granted authority or created a duty, the local funding unit may not refuse to provide adequate funding to fulfill the function. This construction carries out the apparent intent of the Legislature that the courts are free to appoint employees and set salaries within overall appropriations, and yet provides a means for the court to obtain additional funds where it demonstrates that they are necessary to perform a statutory function.

2. The issue in *Hillsdale* is whether the district control unit has the authority to decline to fund salary increases for district court employees which were not alleged or proven to be necessary to maintain a statutory function of the court or to provide for the overall administration of justice. In *Hillsdale*, the judgment must be reversed because the court did not undertake and prove that additional expenditures were required to fulfill a statutory function of the court, and there is no record basis and no claim that the level of funding jeopardized the overall operation of the court or a constitutional function. On the record, it is not possible to conclude that additional expenditures beyond appropriations may be compelled. The issue in *Cheboygan* is whether the trial court may employ an administrative order to compel funding in excess of appropriations. Under MCR 8.112(B), use of administrative orders to compel payment of requested funding is inappropriate. The rule clearly states that a trial court may issue an administrative order governing only internal court management and thus does not authorize trial courts to issue administrative orders to compel appropriations.

3. While inherent-power analysis is implicated when judicial functions are in jeopardy, such analysis is inapplicable in these cases. On the record in *Hillsdale*, there is no proof that the additional salary items were required to be funded by any formulation of the inherent-power doctrine. Public confidence in the decisions of the courts will be fostered by awaiting a proper record for further development of the relationship between judicial independence and the doctrine of separation of

powers. The opinion of the trial court in *Hillsdale* was not based on an asserted constitutionally conferred power to compel increased compensation for the district court employees; nor was it premised on an impairment of a statutory function. In *Cheboygan*, the administrative order and the pendent contempt proceedings were not appropriate under the applicable court rule.

*Hillsdale*, reversed.

*Cheboygan*, administrative order vacated and remanded.

Until full state court financing is realized, to avoid conflicts between the courts and local funding units regarding unsubstantial or marginal appropriation issues, to provide a procedure to resolve substantial differences between courts and funding units that rise to the level of constitutional or statutory neglect while protecting the mandate of the courts, to provide guidance to the courts in effective budgeting and dispute resolution involving courts and local funding units, and to provide a centralized data base to prepare for administration of full state court financing, the Supreme Court adopted an administrative order on court funding which provided:

1. A court must submit its proposed and appropriated annual budget or supplements to the State Court Administrator at the time of its submission to or receipt from a local funding unit.

2. If, after the local funding unit has made appropriations, a court concludes that the funds provided for its operations by the funding unit are insufficient to enable the court to properly perform its duties and that legal action is necessary:

a. Legal action may be commenced thirty days after the court has notified the State Court Administrator that a dispute exists regarding court funding which the court and the local funding unit have been unable to resolve. The notice must be accompanied by written approval of the chief judge of the court regarding commencement of proceedings. The court additionally must supply the State Court Administrator with all facts relevant to the funding dispute. The period may be extended by the State Court Administrator for an additional thirty days.

b. During the waiting period, the State Court Administrator must attempt to aid the court and the involved local funding unit in resolving the dispute.

c. If the court concludes that a civil action to compel funding is necessary, the State Court Administrator must assign a disinterested judge to preside over the action.

Justice RILEY, joined by Chief Justice WILLIAMS and Justice RYAN, dissenting, stated that an administrative order should not be used by a court in the exercise of its inherent power to

compel funding for court operations. Where accord cannot be reached with a legislative funding authority, a court should initiate a suit and bear the burden of proving that its funding request is reasonable and necessary to the court's operation. In an inherent power controversy, a court should be able to employ outside counsel and to recover reasonable attorney fees. However, the court should bear the burden of proving that the requested fees are reasonable.

1. The chief judge of a circuit court and the presiding judge of a district court have the authority to appoint employees and to fix their compensation within appropriations provided by the county board of commissioners or the governing body of the district control unit. In addition, the courts have the inherent power to determine reasonable and necessary operational needs, to establish a budget to provide for them, and to compel funding, but the power cannot be broader than the established need which compels its exercise. The power is not absolute. Implicit in the doctrine of separation of powers is the concept that one branch of government must not usurp the functions of another branch; nor should one branch's power be unchecked by another. Also implicit in the doctrine is the spirit of cooperation among the branches. For the government to operate smoothly, each branch must engage in some activities constitutionally within the province of another. Such powers to cross over into the realm of another branch are incidental and not exclusive, and the branch crossing over must bear the burden of establishing the need for the intrusion. While the power of appropriation is the exclusive domain of the Legislature, it is not absolute, and may not be exercised so as to divest the judiciary of the ability to function independently and effectively.

2. Under the Uniform Budgeting and Accounting Act, administrative officers of local units of government may only spend money as authorized by their boards of commissioners. Money may not be transferred from one account to another without board approval. Lump-sum budgetary appropriations are eliminated and line-item appropriations are permitted. Courts are not local units of government within the meaning of the act and thus a county does not have authority to exercise line-item control over the court's budget. Courts, however, should make good-faith efforts to accommodate county boards by submitting budgets so as to facilitate the boards' compliance with the act.

3. An administrative order should be issued only to govern internal court management, not to compel funding for reasonable and necessary court operations. Where accord cannot be

reached with the legislative funding authority, a court should initiate suit and bear the burden of proving that its funding request is reasonable and necessary to the court's operation. To be reasonable and necessary, the need should not only be practical rather than relative, but should be shown to be needed for the effective administration of justice. A reasonable and necessary standard would provide a court with the means to effectively carry out its functions as mandated by the constitution. Application of the standard clearly renders inappropriate an original mandamus action to compel appropriations. Mandamus will not lie to compel performance of a disputed fact, but only where there is a plain and clear legal duty.

4. The burden of a court to prove that requested funding is reasonable and necessary would require the court to employ outside counsel to litigate its interests. The inherent power of a court includes those powers reasonably required for its practical exercise. Attorney fees incurred as a result thus may be recovered where reasonable. The burden of proving reasonableness is on the court. Among the facts which should be taken into consideration in determining the reasonableness are (1) the professional standing and experience of the attorney, (2) the skill, time, and labor involved, (3) the amount in question and the results achieved, (4) the difficulty of the case, (5) the expenses incurred, and (6) the nature and length of the professional relationship with the client. An award of fees should be upheld unless it appears on review that the trial court's finding of reasonableness was an abuse of discretion.

Chief Justice WILLIAMS agreed with Justice RILEY, but wrote separately to note that the issues presented in these cases are neither peculiar to the parties, nor rare and uncommon.

Where there is no question either of a clear statutory duty of a governmental entity to pay an obligation or of the reasonableness of the obligation, payment of the obligation will be enforced. A county, in appropriating funds for payment of court employees, has no subordinate legislative power to exercise, but carries out the mandate of the Legislature in an executive capacity. In exercising statutory power, a court does not exercise its own discretion, but enforces a mandate of the Legislature. By contrast, in exercising inherent power, a court protects its constitutional position within the tripartite system of government.

In these cases, there is no clear statutory mandate to enforce. The Legislature mandated payment only when compensation was within appropriations provided by the counties. The courts were seeking compensation not within the appropriations pro-

vided by the counties, but in excess of the appropriations. The phrase "within appropriations provided" delegates to local funding units legislative discretion to determine the maximum appropriation. As a result, a court has no clear legislative mandate to enforce unless the local unit refuses to pay compensation "within appropriations provided." If appropriate, enforcement can only be effected by the exercise of the court's inherent power.

### OPINION OF THE COURT

1. COURTS — APPROPRIATIONS — LOCAL UNITS OF GOVERNMENT —
   COMPENSATION OF EMPLOYEES — ADMINISTRATIVE ORDERS —
   LITIGATION.

   A court has the authority to set the salaries of its employees which, if not unreasonable and within the appropriations of the local funding unit, must be paid by the unit; a court does not, however, have authority to compel expenditures by local funding units in excess of appropriations through administrative orders; where a court and the local funding unit are unable to agree on such expenditures, the court may institute suit and must bear the burden of proving that the appropriation it seeks is needed to fulfill the performance of a statutorily mandated function or functions (MCR 8.112[B]).

### DISSENTING OPINION BY RILEY, J.

2. COURTS — APPROPRIATIONS — ADMINISTRATIVE ORDERS.

   *An administrative order should not be used by a trial court in the exercise of its inherent power to compel a legislative funding authority to appropriate reasonable and necessary funds for court operations; where accord cannot be reached with the funding authority, a court should initiate a suit and bear the burden of proving that its budget requests are reasonable and necessary.*

3. COURTS — APPROPRIATIONS — INHERENT POWER — SEPARATION OF
   POWERS — COMPENSATION OF EMPLOYEES.

   *The chief judge of a circuit court and the presiding judge of a district court have the authority to appoint employees and to fix their compensation within appropriations provided by the county board of commissioners or the governing body of the district control unit; in addition, the courts have the inherent power to determine reasonable and necessary operational needs, to establish a budget to provide for them, and to compel funding; the power is not absolute, however, and is subject to check by the other coequal branches of government (Const*

*1963, art 3, § 2; MCL 600.591, 600.8271; MSA 27A.591, 27A.8271).*

4. COURTS — APPROPRIATIONS — LOCAL UNITS OF GOVERNMENT.

*Courts are not local units of government within the meaning of the Uniform Budgeting and Accounting Act and are not subject to line-item appropriations (MCL 141.421 et seq.; MSA 5.3228[21] et seq.).*

5. COURTS — INHERENT POWER — LITIGATION — ATTORNEY FEES.

*A court may employ outside counsel and recover reasonable attorney fees in inherent power litigation; the burden of proving the reasonableness of attorney fees is on the court, and among the factors to be taken into consideration in determining the reasonableness of the fees are the professional standing and experience of the attorney, the skill, time, and labor involved, the amount in question and the results achieved, the difficulty of the case, the expenses incurred, and the nature and length of the professional relationship with the client.*

OPINION BY WILLIAMS, C.J.

6. COURTS — APPROPRIATIONS — STATUTORY POWER — INHERENT POWER.

*Where there is no question either of a clear statutory duty of a governmental entity to pay an obligation or of the reasonableness of the obligation, payment of the obligation will be enforced; in compelling such payment, a court does not exercise its own discretion, but enforces a mandate of the Legislature; by contrast, in exercising inherent power, a court protects its constitutional position within the tripartite system of government.*

7. COURTS — APPROPRIATIONS — COMPENSATION OF EMPLOYEES — STATUTORY POWER.

*The provisions in the Revised Judicature Act that courts may fix the compensation of their employees within appropriations provided by local funding units delegates to the local units legislative discretion to determine the maximum amount of the appropriations; the provisions afford the courts no clear legislative mandate to enforce unless the local unit refuses to pay compensation within the appropriations (MCL 600.591, 600.8271; MSA 27A.591, 27A.8271).*

*Ellis, Loren, Lambright & Shirk* (by *Kevin G. Shirk*) for Employees and Judge of the Second District Court.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper*
(by *Philip W. Nantz, Robert W. White, John H.
Gretzinger,* and *Douglas W. Van Essen*) for Cheboygan County Board of Commissioners.

*Parker & Hayes, P.C.* (by *James B. Parker*), for Hillsdale County.

*H. James Starr* and *Wesley P. Hackett, Jr.*
(*Joseph B. Bilitzke,* of counsel), for Cheboygan Circuit Judge.

BOYLE, J. These cases require determination of whether a trial court may employ an administrative order to compel funding in excess of appropriations and consideration of a procedure to guide the fair and expeditious resolution of conflicts between the judiciary and local funding units.

The governmental funding crisis that is the backdrop for these conflicts began in this state in the late 1960's and early 1970's. An explosion of litigation, the creation of new courts, new judicial remedies, inflation, the introduction of unionization into the public sector, substantial unemployment, and public resistance to tax increases created increased competition between the courts and units of local government for local tax revenues.

The judicial system would be benefited if our "one court of justice," Const 1963, art 6, § 1, was financed by the State Legislature. While the state has undertaken to eliminate local funding of state functions, MCL 600.9947; MSA 27A.9947, relief has been forthcoming primarily in Detroit and in Wayne County. The result has been disparity in compensation and in delivery of services.

The allocation of tax revenues has become an ever more difficult task for local funding units. The need to maintain and improve local court staff

and services is confounded by shortage of funds. Local judges who should be independent of the political process find themselves increasingly involved in the political give-and-take inherent in the appropriation process.

In this perplexing and disturbing situation, we attempt to provide guidance for resolution of conflict and a basis for the development of data supporting further movement toward statewide financing by procedures set forth in the administrative order attached as an appendix, effective upon issuance of the Court's judgment orders.

## I. FACTS

### A. *Hillsdale County*

The County of Hillsdale established a contributory retirement plan in which the employees contribute three percent and the county four percent of the gross wages of all non-union county employees. In a previous action, the district court employees for that county obtained a circuit court judgment against the county declaring that they could withdraw from the plan; thereafter they entered into an agreement with the judge increasing their compensation by the four percent that the county would, under the plan, have been required to contribute.

When the county refused to provide funds to pay the additional compensation, the district court issued an administrative order directing the county to pay the additional four percent to the court employees. The county again refused and the employees and the judge commenced this action in the circuit court to compel payment by the county. The county filed a countersuit for injunctive relief.

The circuit judge found that payment of the

increase would not adversely affect the county and that failure to pay the increase would not adversely affect the operation of the district court. Placing the burden of proving that the administrative order was unreasonable on the county, the circuit judge held that the order was reasonable and that the county was obliged to pay the increased salary. The county appealed to the Court of Appeals and filed an application for leave to appeal to this Court before issuance of a decision by the Court of Appeals. We granted leave on May 17, 1984.

B. *Cheboygan County*

The Cheboygan circuit judge asked the county to provide $5,619.25 for a part-time mediation clerk. The board of commissioners agreed to provide $2,400 to employ one part-time employee for one full seven-hour day each week at the rate of $4.93 per hour. However, the judge hired a part-time mediation clerk for 17½ hours per week and directed that she be paid $5.91 per hour and receive pro-rata sick leave, vacation, medical, and hospital insurance benefits. The county policy is that part-time county employees do not receive such benefits. The board adopted a resolution stating that the employee would not receive fringe benefits and would be paid $4.93 per hour in accordance with county policies for all part-time personnel paid with county funds.

On January 6, 1984, the judge issued Administrative Order 1984-1 requiring that the county provide the wages and benefits agreed upon by the judge. The county decided to comply to the extent of the $2,400 previously appropriated for part-time circuit court employees. In March 1984, the county advised the judge that it did not consider the employee's salary to be reasonable and necessary

to the court's operations and that it would not appropriate funds beyond the $2,400. The county also took steps to charge the fringe benefit costs against the $2,400 appropriation. On March 28, 1984, the circuit judge entered Administrative Order 1984-2, requiring, inter alia, that the county refrain from altering the budget of the court without prior written consent of the court. The administrative order warned that it was enforceable through the judge's contempt power. On April 3, 1984, the judge issued an order to show cause why the county clerk should not be held in contempt for failure to comply with the administrative order. On April 6, 1984, the board, the county clerk, and the county treasurer filed a motion for immediate consideration and a complaint for superintending control with this Court. The judge filed a counter-complaint for declaratory judgment and sought an order requiring payment by the county of attorney fees incurred in defending the case before this Court. This Court granted the county's motion for immediate consideration and ordered that the case be argued and submitted as a calendar case together with the *Hillsdale County* appeal. On stipulation of the parties, hearings in circuit court to enforce the administrative orders were adjourned.

We hold that MCR 8.112(B) does not provide authority to compel expenditures and conclude that when agreement cannot be reached between a court and a funding unit, the court may initiate suit and shall bear the burden of proof[1] regarding expenditures in excess of appropriations. Our first conclusion requires vacation of the administrative order and pendent contempt proceedings in *Che-*

---

[1] These cases do not present a question involving the authority of a court to negotiate collective bargaining agreements, *Livingston Co v Livingston Circuit Judge,* 393 Mich 265; 225 NW2d 352 (1975). Our opinion is not intended to reach this question.

*boygan Co Comm'rs v Cheboygan Circuit Judge.*
Our second conclusion requires discussion of the
law applicable to the situation presented in *Employees & Judge of the Second Judicial Dist v
Hillsdale Co.*

## II. ANALYSIS

The issue in *Hillsdale* is whether the district
control unit has the authority to decline to fund
salary increases for district court employees which
were not alleged or proven to be necessary to
maintain a statutory function of the court or to
provide for the overall administration of justice. In
*Cheboygan* the issues are whether a court may
direct a county to appropriate funds by means of
an administrative order and whether the circuit
judge may employ counsel to defend the court's
interest in these proceedings.

Each branch of government has inherent power
to preserve its constitutional authority.

> It was certainly never intended that any one
> department, through the exercise of its acknowl-
> edged powers, should be able to prevent another
> department from fulfilling its responsibilities to
> the people under the Constitution. [*O'Coin's, Inc v
> Worcester Co Treasurer,* 362 Mass 507, 511; 287
> NE2d 608 (1972).]

However, an indispensable ingredient of the
concept of coequal branches of government is that
"each branch must recognize and respect the lim-
its on its own authority and the boundaries of the
authority delegated to the other branches." *United
States v Will,* 449 US 200, 228; 101 S Ct 471; 66 L
Ed 2d 392 (1980).

No claim has been asserted in the *Hillsdale* case
that a statutory function, the overall operation of

the court, or a constitutional function[2] is in jeop-

[2] An examination of the cases dealing with funding of the courts reveals two dimensions to the disputes. The first involves the kinds of expenses for which the power to compel funding is asserted. Second, the courts reviewing such disputes have taken three distinct approaches to the issues before them.

The kinds of expenses for which the power to compel funding has been asserted can be classified along a spectrum. In the first kinds of cases, funding is sought for a specific matter necessary to conducting court, and the propriety of the amount sought is not disputed. These cases have often involved expenses necessitated by somewhat unusual, even emergency, circumstances. See, *e.g., O'Coin's v Worcester Co Treasurer,* 362 Mass 507; 287 NE2d 608 (1972) (tapes and tape recorder for use in criminal trials where stenographer not available); *Stowell v Jackson Co Bd of Supervisors,* 57 Mich 31; 23 NW 557 (1885) (boarding and lodging costs for sequestered jury); *Grimsley v Twiggs Co,* 249 Ga 632; 292 SE2d 675 (1982) (temporary clerical help for court clerk); *Knuepfer v Fawell,* 96 Ill 2d 284; 449 NE2d 1312 (1983) (provision of sufficient number of courtrooms). Closely related are cases in which the authority of the court to employ certain permanent personnel is at issue. See, *e.g., Flathead Co Comm'rs v 11th Dist Court,* 182 Mont 463; 597 P2d 728 (1979) (county refused to fund position provided for by statute). In the next category of cases, while the court's authority to hire certain personnel may also be discussed, it is the amount of compensation which is at issue: here the proper amount of funding for the position is disputed. See, *e.g., In re Lyon Co Court Clerk v Lyon Co,* 308 Minn 172; 241 NW2d 781 (1976); *Young v Pershing Co Bd of Comm'rs,* 91 Nev 52; 530 P2d 1203 (1975) (probation officers, secretary, and other court employees). Related cases involve the question of who, the court or the county, has the power to hire, control, and determine the compensation of court personnel. See, *e.g., Mowrer v Rusk,* 95 NM 48; 618 P2d 886 (1980); *State ex rel Weinstein v St Louis Co,* 451 SW2d 99 (Mo, 1970); *Holohan v Mahoney,* 106 Ariz 595; 480 P2d 351 (1971). Finally, other cases involve the broadest assertion of judicial inherent power to determine the overall budget of the court; here, the focus is not upon a specific court function, or a specific cost, but instead upon the sum total of the costs for all the functions of the court. See, *e.g., Commonwealth ex rel Carroll v Tate,* 442 Pa 45; 274 A2d 193 (1971); *Mowrer v Rusk, supra; Beckert v Warren,* 497 Pa 137; 439 A2d 638 (1981).

The courts have also taken three distinct approaches in reviewing disputes over court funding. Sometimes, where statutes are not considered, or where the applicable statutes are found not to authorize the funding sought by the court, the issues are resolved solely on the basis of an inherent power analysis. See, *e.g., Commonwealth v Tate, supra; Beckert v Warren, supra; In re Salary of Juvenile Director,* 87 Wash 2d 232; 552 P2d 163 (1976); *Young v Pershing Co Comm'rs, supra* (expenses for secretary and library); *People ex rel Bier v Scholz,* 77 Ill 2d 12; 394 NE2d 1157 (1979); *Noble Co Council v State ex rel Fifer,* 234 Ind 172; 125 NE2d 709 (1955); *Smith v Miller,* 153 Colo 35; 384 P2d 738 (1963). The second approach interprets the applicable statutes to be coextensive with the inherent power of the judiciary,

ardy because of the actions taken by the funding unit.

The Legislature has specifically authorized the district court to "appoint employees and fix their compensation," MCL 600.8271; MSA 27A.8271. However, we are unable to conclude from the record in *Hillsdale* that additional expenditures beyond appropriations may be compelled.

This Court held in *Judges of the 74th Judicial Dist v Bay Co,* 385 Mich 710; 190 NW2d 219 (1971), that the directive by the Legislature that the court shall appoint and fix compensation of its employees represents a legislative intent to place those determinations in the control of the district court judge. The court has the authority to fix salaries, which if reasonable and within appropriations, must be paid by the funding unit. *Sturgis v Allegan Co,* 343 Mich 209; 72 NW2d 56 (1955). We are unable to conclude, however, that the phrase "within appropriations provided by the . . . district control unit," MCL 600.8271; MSA 27A.8271, is a determination by the Legislature that the

either on the grounds that the statute would otherwise be unconstitutional, or on the ground that the statute constitutes a legislative recognition of the judiciary's inherent power. See, *e.g., Grimsley v Twiggs Co, supra; O'Coin's v Worcester Co Treasurer, supra; State v Superior Court of Marion Co,* 264 Ind 313; 344 NE2d 61 (1976); *State ex rel Johnson v Taulbee,* 66 Ohio St 2d 417; 423 NE2d 80 (1981) (discussion of prior statute). The third approach to resolving such disputes is based solely on statutory analysis. In these cases, a statute is either held to provide sufficient authority to meet the court's need, or the court's claim is held to fail because statutory procedures have not been followed. See, *e.g., Deddens v Cochise Co,* 113 Ariz 75; 546 P2d 811 (1976); *Knuepfer v Fawell, supra; Pena v Second Dist Court,* 681 P2d 953 (Colo, 1984); *State ex rel Schneider v Cunningham,* 39 Mont 165; 101 P 962 (1909); *State ex rel Kitzmeyer v Davis,* 26 Nev 373; 68 P 689 (1902).

Inherent power analysis often does not distinguish between a court directive to provide funds to fulfill a specific constitutionally required function, and a court directive to fund that which is reasonable and necessary for the administration of justice, *Beckert v Warren, supra.* See Note: *The courts' inherent power to compel legislative funding of judicial functions,* 81 Mich L R 1687-1701 (1983).

funding unit is limited to *approving* the amounts fixed by the district court. To so construe the statute would be to disregard the statutory language. The Legislature has amended several statutes authorizing the courts to appoint and fix salaries.[3] It has not, however, eliminated the function of the funding unit. Despite amendment of the District Court Act by 1980 PA 438, the language restricting the compensation "within appropriations fixed by the district control unit" has been retained. MCL 600.8271(1); MSA 27A.8271(1).

The Legislature has stated that the exercise of the judicial authority is limited to setting of salaries "within appropriations set by the governing body of each district control unit," MCL 600.8271; MSA 27A.8271. This language cannot, however, bar a claim that an amount in excess of appropriations is necessary to fulfill a function mandated by the Legislature. To hold otherwise would be to permit a legislative directive to be frustrated by the funding units' failure to provide necessary funds. *Wayne Circuit Judges v Wayne Co,* 15 Mich App 713, 726; 167 NW2d 337 (1969). See also *Jail Inmates v Wayne Co Sheriff,* 391 Mich 359; 216 NW2d 910 (1974).[4]

---

[3] MCL 600.1481; MSA 27A.1481 was amended in part by 1980 PA 438, but the provision concerning the compensation of judicial assistants (other than those in the 36th District Court, the Third Judicial Circuit Court, and the City of Detroit Recorder's Court) was unchanged: "The compensation of a judicial assistant shall be fixed by the recommending judges within the sum appropriated therefor by the legislative body . . . ." MCL 600.1471; MSA 27A.1471, which 1980 PA 438 amended to provide for law clerks in district courts as well as circuit courts, states: "The compensation of a law clerk shall be fixed by the judges of the court within the sum appropriated for that purpose by the county board of commissioners or by the governing body of the district control unit."

[4] Justice BRENNAN has explicated a distinction between the legislative and executive functions of the county. He stated:

"Within the limits of its delegated legislative powers, counties may pass appropriations for the expenditures of county funds for county purposes.

Where the Legislature has by statute granted authority or created a duty,[5] the local funding unit may not refuse to provide adequate funding to fulfill the function.[6]

"But in the scheme of county government, the Legislature has not seen fit to delegate that ultimate power of the purse by which a legislative judgment must be made in advance of payment of any and all public funds." *Wayne Circuit Judges v Wayne Co (On Rehearing)*, 386 Mich 1, 24; 190 NW2d 228 (1971) (separate opinion of BRENNAN, J.).

We note that the statutory analysis suggested by Justice BRENNAN is not directly applicable to a dispute involving the district courts. His analysis rested upon an express "exclusion" of jurisdiction over the circuit courts from the general legislative powers granted to county boards under MCL 46.11; MSA 5.331. See *Wayne Circuit Judges v Wayne Co (On Rehearing), supra* at 14-15. No similar "exclusion" exists concerning the district courts.

[5] *Cf. Wayne Co Prosecutor v Wayne Co Bd of Comm'rs*, 93 Mich App 114; 286 NW2d 62 (1979) (where the Legislature has statutorily imposed duties and obligations, the court determines whether sufficient levels of funding have been provided).

[6] Although not dispositively resolved in the jurisprudence of this state, the question of a court's authority to order salary increases has been the subject of considerable litigation elsewhere.

In *Smith v Miller*, 153 Colo 35; 384 P2d 738 (1963), and *Deddens v Cochise Co*, 113 Ariz 75; 546 P2d 811 (1976), the courts construed statutes which authorized a local court to fix the salaries of employees "with the approval of the board of supervisors," Ariz Rev Stat, § 12-252, and "subject to the approval of the county commissioners," former Colo Rev Stat 39-16-1, to create a "ministerial duty . . . to approve [the amounts]" and to provide the means for payment, *Smith v Miller, supra* at 41, unless the board was able to show that the schedule of salaries was wholly unreasonable, capricious, and arbitrary.

Similarly, in *Norman v Van Elsberg*, 262 Or 286, 288-290; 497 P2d 204 (1972), the Oregon Supreme Court held that the words "approved" in a statute which conferred on local judges the authority to appoint persons "at a salary designated by the appointing judge and approved by the budget-making body of the county," Or Rev Stat 419.604(1), permitted the budget-making body of the county to disapprove the salary schedule fixed by the judges only if salaries were unreasonable.

By contrast, in *People ex rel Bier v Scholz*, 77 Ill 2d 12; 394 NE2d 1157 (1979), the Illinois Supreme Court issued a writ of mandamus vacating an administrative order of a chief judge fixing probation officer salaries above those approved by the county board. The court's analysis rested on statutory provisions which provided, inter alia, that the amount of compensation "shall be determined by the board of commissioners or supervisors," Ill Rev Stat 1977, ch 38, ¶ 204-6, Ill

However, since the trial court in *Hillsdale*
found, and it is not disputed here, that the district
court was functioning at a level "satisfactory to
all," without the four-percent increase proposed by
the district court judge, there is on this record no
basis for resolving the issue of when and under
what standards the judiciary may compel expendi-
tures beyond those appropriated to fulfill a statu-
tory function.

Our responsibility in this case is to give effect to
the intent of the Legislature, *In re Certified Ques-
tion,* 416 Mich 558; 331 NW2d 456 (1982).

We harmonize the principles outlined above and
give effect to each by concluding 1) that the court
has the authority to set salaries which, if reason-
able and "within appropriations," must be ap-
proved by the control unit, and 2) that where the
parties are unable to agree, the court may insti-
tute suit and shall bear the burden of proving that
the appropriation it seeks is necessary to the
performance of its statutorily mandated function.
This construction carries out the apparent intent
of the Legislature that the courts are free to
appoint employees and set salaries "within appro-
priations," and yet provides a means for the court
to obtain additional funds where it demonstrates
that they are necessary to perform a statutory
function.

Const, and "each shall receive a monthly salary fixed by the county
board," Ill Rev Stat 1977, ch 23, ¶ 2683.

Likewise, in *In re Salary of Juvenile Director,* 87 Wash 2d 232; 552
P2d 163 (1976), the Washington Supreme Court interpreted the
phrase "receive compensation which shall be fixed by the board of
county commissioners" to preclude a claim of judicial power to fix
salaries inferred from the power to appoint.

Other courts have held that statutes authorizing a judge to fix
salaries "with the consent" of a funding unit do not delegate discre-
tionary legislative power to the board and do not extend the power to
veto reasonable budgeting requests, *Young v Pershing Co Comm'rs,* n
2 *supra; Lubbock Co Comm'rs Court v Martin,* 471 SW2d 100 (Tex Civ
App, 1971).

The issue in *Cheboygan* is whether the trial court may employ an administrative order to compel funding in excess of appropriations. We hold that the use of administrative orders to compel payment of requested funding is inappropriate under MCR 8.112(B).[7] MCR 8.112(B)(1) states:

A trial court may issue an administrative order governing only *internal* court management. [Emphasis added.]

We conclude, in view of the clear language of the rule, that MCR 8.112(B) does not authorize trial courts to issue administrative orders to compel appropriations.

As there has been no determination of the reasonableness of the attorney fees incurred by the circuit judge in *Cheboygan* in connection with his representation before this Court, we remand for a determination of the reasonableness of the attorney fees incurred. MCL 49.73; MSA 5.826.[8]

---

[7] MCR 8.112(B), substantially the same as former GCR 1963, 927.2, provides:

"(B) Administrative Orders.

"(1) A trial court may issue an administrative order governing only internal court management.

"(2) Administrative orders must be sequentially numbered during the calendar year of their issuance. *E.g.*, Recorder's Court Administrative Orders 1984-1, 1984-2.

"(3) Before its effective date, an administrative order must be sent to the state court administrator. If the state court administrator directs, a trial court shall stay the effective date of an administrative order or shall revoke it. A trial court may submit such an order to the Supreme Court as a local court rule."

[8] MCL 49.73; MSA 5.826 provides:

"Sec. 3. The board of commissioners of a county shall employ an attorney to represent elected county officers, including the sheriff, prosecuting attorney, clerk, treasurer, county surveyor, county executive, register of deeds, drain commissioner, mine inspector, public works commissioner, and judges of the county district, probate, and circuit courts in civil matters, as a defendant, when neither the prosecuting attorney or county corporation counsel is able to represent the particular officer. Legal advice, counsel, or court action shall

### III. CONCLUSION

This Court has stood "foursquare" in support of the constitutional doctrine of inherent power, *Wayne Circuit Judges v Wayne Co (On Rehearing)*, *supra*, 386 Mich 8. However, the standard against which such authority is to be measured has not been articulated. Indeed, the original BLACK-DETHMERS opinion in *Wayne Circuit Judges v Wayne Co*, 383 Mich 10; 172 NW2d 436 (1969) (adopted by the Court on rehearing), references several possible standards.[9]

We agree with the statement of our dissenting colleagues that an inherent power analysis is implicated when judicial functions are in jeopardy. *Post*, p 743.

However, this observation is simply inapplicable to the cases before us. On this record there is no allegation and no proof that the additional salary item(s) were required to be funded by any formulation of the inherent-power doctrine.

An assertion of judicial power ultimately rests on the consent of thoughtful citizens. Where circumstances demonstrate a right and the record supports relief, history demonstrates public support. Public belief in the propriety, fairness, and justice of our decisions is essential. Therefore we

---

be required under this section only in a case which involves an official act or duty of the office of the county officer. The attorney shall receive reasonable compensation as shall be determined by the board of commissioners. This section shall not supersede section 8 of Act No. 170 of the Public Acts of 1964, being section 691.1408 of the Michigan Compiled Laws."

[9] These possible standards include the following: "reasonably necessary to fulfill the constitutional obligation," *Wayne Circuit Judges v Wayne Co, supra*, 383 Mich 33-34, 36, "functions serviceably as a coequal branch of Michigan's government," "ascertainment of critical judicial needs and, if that ascertainment be affirmative (it is here indeed), of determining the reasonableness or unreasonableness of the monetary amount required to meet the urgency of the situation," "critically pressing" needs.

defer to the observation that public willingness to accept and abide by a court decision "ultimately rests on sustained public confidence in its moral sanction." *Baker v Carr*, 369 US 186, 267; 82 S Ct 691; 7 L Ed 2d 663 (1962) (Frankfurter, J., *dissenting*).

In our judgment such confidence will be fostered by awaiting a proper record for further development of the relationship between judicial independence and the doctrine of separation of powers.

The opinion of the trial court in *Employees & Judges of the Second Judicial Dist v Hillsdale Co* was not based on an asserted constitutionally conferred power to compel increased compensation for the district court employees; nor was it premised on an impairment of a statutory function. Therefore, we reverse.

Administrative Orders 1984-1 and 1984-2 and the pendent contempt proceedings in *Cheboygan Co Comm'rs v Cheboygan Circuit Judges* were not appropriate under MCR 8.112(B). Accordingly, we vacate the proceedings below. We remand to the Cheboygan Circuit Court for a determination of reasonable attorney fees under MCL 49.73; MSA 5.826 and entry of an appropriate order.

No costs, a public question being involved.

LEVIN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

### APPENDIX

The present anomaly of constitutionally and statutorily mandated state functions financially dependent on local governments—which often operate on a limited tax base—leaves trial courts in a vulnerable and perplexing position.

Until such time as full state court financing is

realized, it is important to accomplish several objectives. First, in the interest of governmental comity and in deference to the principle of separation of powers, it is important to avoid conflicts between state courts and local funding units that arise over unsubstantial or marginal appropriation issues. Second, it is necessary to have a procedure and a data base that will insure that where there is a substantial difference between a court and its funding unit that rises to a constitutional or statutory neglect the court can prudently but effectively protect its mandate. Finally, to give guidance to the courts in effective budgeting and in dispute resolution involving courts and local funding units, and to prepare for the administration of full state court financing, there is a need for a broader, centralized data base on trial court budgeting.

In response to those concerns and in furtherance of these goals, we adopt the following Administrative Order to be effective on issuance of the judgment order in the instant cases:

## Administrative Order
## No. 1985-6

COURT FUNDING; FUNDING DISPUTES BETWEEN
COURTS AND LOCAL FUNDING UNITS;
SUBMISSION OF BUDGETS

### I

This Administrative Order applies to all trial courts as defined in MCR 8.110(A).

### II

A court shall submit its proposed and appropriated annual budget or any supplements thereto to the State Court Administrator at the time of its

submission to or receipt from the local funding unit or units.

## III

If, after the local funding unit or units have made their appropriations, a court concludes that the funds provided for its operations by its local funding unit or units are insufficient to enable the court to properly perform its duties and that legal action is necessary, the procedures set forth in this order shall be followed.

1. Legal action may be commenced 30 days after the court has notified the State Court Administrator that a dispute exists regarding court funding that the court and the local funding unit or units have been unable to resolve. The notice must be accompanied by a written communication indicating that the chief judge of the court has approved the commencement of legal proceedings. With the notice, the court must supply the State Court Administrator with all facts relevant to the funding dispute. The State Court Administrator may extend this period for an additional 30 days.

2. During the waiting period provided in paragraph 1, the State Court Administrator shall attempt to aid the court and the involved local funding unit or units to resolve the dispute.

3. If, after the procedure provided in paragraph 2 has been followed, the court concludes that a civil action to compel funding is necessary, the State Court Administrator shall assign a disinterested judge to preside over the action.

The procedures provided in this Administrative Order do not apply to any portion of a court's budget that is funded by the state.

RILEY, J. (*dissenting*). These cases were consolidated to enable this Court to decide whether an

administrative order may be used by a trial court
in the exercise of its inherent power to compel
reasonable and necessary appropriations for court
operations; whether the circuit judge may employ
outside counsel to defend the court's interest in
these proceedings; and, whether counsel's fees
were reasonable and necessary.

These cases evidence the continuing struggle
between the legislative and judicial branches of
government in their conscientious efforts to carry
out the duties delegated to them under the Michi-
gan Constitution. The purpose of this opinion is to
set forth principled procedures to resolve, as fairly
and expeditiously as possible, those conflicts which
necessarily arise when the legislative branch re-
fuses to approve funding requested by the judicial
branch for reasonable and necessary court opera-
tions.

In addressing these issues, one is reminded that
the genius of our forefathers was the creation of a
tripartite form of government; three independent
branches of government dependent on each other
for the survival of the whole; three independent
branches of government which recognize that their
exclusive powers must not be exercised to weaken
another branch, lest it lead to the destruction of
the whole.

It is our continuing faith in this legacy that has
enabled our republic to endure, and it is my faith
in the vitality of that delicate balance of power
implicit in this legacy that I would reaffirm today.[1]

---

[1] It may be argued, as does the majority, that in deciding these
cases we need not address the constitutional doctrine of inherent
power because there is statutory authority that may be relied upon to
decide the instant cases.

I do not agree. I address the constitutional issue because I believe
that to do otherwise is to miscalculate the enormity of the problem
and to be insensitive to the concerns of members of the judiciary and
county funding units who seek our guidance. Implicit in the conflicts

I

FACTS AND PROCEDURAL HISTORY

A. *Hillsdale County*

The County of Hillsdale (hereinafter, the county) has a retirement-pension system into which employees pay three percent and the employer pays four percent of the gross wages of all nonunion employees in the county. The district court employees for the second district, second division, opted to withdraw from the retirement program, but the county refused their proposal. The employees then sued the county, and the visiting circuit judge issued an opinion holding that the employees were court, not county, employees. The trial judge also ordered that the employees be allowed to withdraw from the pension plan and that their three-percent contributions be returned. Pursuant to the trial judge's opinion, the county refunded the three percent paid by the employees. This opinion is not an issue in this appeal.

Having successfully litigated their right to withdraw from the retirement plan, the employees then bargained as a group with the district judge for the 1983 budget. Agreement was reached which provided, in part, that the four-percent benefit, otherwise paid by the county into the retirement fund, would be paid directly to the employees. The district court submitted this agreement to the county as part of its 1983 budget proposal. The county countered by deleting the four-percent wage increase.

---

that arise between these two units of government is the issue of inherent power. To leave this issue "to another day," as my colleagues do, is to leave unresolved the fundamental question in cases that have plagued us for a decade; and thus prolong the struggle rather than speak to it now. This, I believe, does not serve the parties in the instant cases, those cases presently making their way through the court system, nor the people of the State of Michigan.

Responding to the Hillsdale Circuit Court's action, the district court issued an administrative order directing the county to pay the four-percent wage increase to the court employees. When the county refused to comply with the administrative order, the district judge and his employees commenced suit. The county filed a countersuit seeking injunctive relief. The trial judge found that payment of the four-percent wage increase would have no adverse effect on the fiscal affairs of the county; nor would failure to pay the four percent have any adverse effect on the operation of the district court. The trial court also concluded that it was the burden of the county to show that the administrative order was unreasonable. Finding the administrative order to be reasonable, the trial court ruled in favor of the employees. The county appealed to the Court of Appeals and filed an application to this Court for leave to appeal prior to a decision by the Court of Appeals, which we granted on May 17, 1984.

## B. *Cheboygan County*

The Cheboygan County Board of Commissioners (hereinafter, the board) is the supervising body of Cheboygan County and is responsible for all public funds received by the county. Each funded unit within the county is responsible for submitting a budget proposal to the board for the following fiscal year. On September 16, 1983, Circuit Judge Livo sent the board a copy of the 1983 budget with the amounts requested for the fiscal year 1984. On September 21, 1983, Judge Livo met with the county budget committee and submitted an alternative budget, requesting a greater appropriation for the court than he had originally proposed on September 16, 1983. In October, 1983, the county

adopted Judge Livo's original request of September 16, 1983, for the 1984 fiscal year.

On December 7, 1983, Judge Livo wrote the board advising that effective January 1, 1984, the court would be hiring a part-time employee who would receive a specific salary and certain fringe benefits (hospitalization and retirement). On January 3, 1984, the board adopted a resolution (consistent with county policies regarding all county-funded part-time personnel) that the proposed employee would not receive benefits and would be paid at a lower hourly rate than Judge Livo had stated in his letter of December 7, 1983. This board resolution prompted Judge Livo to issue Administrative Order 1984-1, directing the implementation of benefits reflected in his letter of December 7, 1983. The board, in an attempt to avoid further controversy, voluntarily determined not to carry out the January 3, 1984 resolution, as long as there remained existing funds in the circuit court's account.

However, on March 5, 1984, the board sent a letter to Judge Livo stating that it did not consider the disputed employee's position to be reasonable and necessary to the operation of the circuit court. Furthermore, it advised that it did not intend to appropriate additional funds beyond those allowable under the original request by Judge Livo for the 1984 fiscal year. Thus, on March 28, 1984, Judge Livo entered Administrative Order 1984-2, requiring, among other things, that the clerk and the treasurer refrain from any efforts to reduce the budget of the court. The administrative order also stated that it was enforceable through Judge Livo's contempt power. On April 6, 1984, the board, the county clerk, and the county treasurer jointly filed a motion for immediate consideration and a complaint for superintending control with

this Court. The motion for immediate considera-
tion was granted, and it was directed that the case
be submitted as a calendar case.

## II

## DISCUSSION

### A. *One Court of Justice*

The State of Michigan has one court of justice.
Art 6, § 1 of the Michigan Constitution provides:

> The judicial power of the state is vested exclu-
> sively in one court of justice which shall be divided
> into one supreme court, one court of appeals, one
> trial court of general jurisdiction known as the
> circuit court, one probate court, and courts of
> limited jurisdiction that the legislature may estab-
> lish by a two-thirds vote of the members elected to
> and serving in each house.

This section of the Michigan Constitution cre-
ated a court of general jurisdiction known as the
circuit court. For the administration of the circuit
court, the state was divided into judicial circuits.[2]
The chief judge of the circuit court within each
judicial circuit is responsible for the administra-
tive duties of that court. One of these administra-
tive duties requires the appointment and wage
fixing of the circuit court employees within the
appropriations provided by the county board. MCL
600.591; MSA 27A.591 states, in pertinent part:

> (1) Except as otherwise provided by law, the
> chief judge of the circuit court in each judicial
> circuit shall appoint the employees of the circuit
> court in each judicial circuit and fix their compen-

---

[2] "The state is divided into judicial circuits as provided in this
chapter [600.502 through 600.549g]." MCL 600.501; MSA 27A.501.

sation within appropriations provided by the county board of commissioners of the county or counties comprising the judicial circuit.

(2) Compensation of the employees of the circuit court in each judicial circuit shall be paid by the county or counties comprising the judicial circuit.

Pursuant to the authority provided by art 6, § 1 of the Michigan Constitution, the Legislature created a court of limited jurisdiction in the form of a district court. MCL 600.8101; MSA 27A.8101 provides in § 8101:

(1) A district court is established in the state. The district court is a court of record. The state is divided into judicial districts of the district court each of which is an administrative unit subject to the superintending control of the supreme court.

Within the judicial districts of the district court, the presiding judge has authority over all matters of administration, subject to the supervision of this Court.[3] Similar to the statutory authority of the circuit courts, the district courts also have the statutory authority to appoint employees of the district court and fix their compensation within the appropriations provided by the governing body.

(1) Except as otherwise provided, the judges of the district court shall appoint the employees thereof and fix their compensation within appropriations provided by the governing body of each district control unit.

(2) Compensation of employees of the district court shall be paid by each district control unit, except as otherwise provided in this act. [MCL 600.8271; MSA 27A.8271.]

---

[3] "The presiding judge shall have full authority and control, subject to supervision of the supreme court, over all matters of administration." MCL 600.8221; MSA 27A.8221.

In *Judges of the 74th Judicial Dist v Bay Co,* 385 Mich 710, 723-724; 190 NW2d 219 (1971), this Court applied the statutory authority set forth above, holding, in part, that the district judge, not the county, regulates the terms of employment with the employees of the district court, even though they are paid by the district control unit.

Thus, the State of Michigan has both circuit and district courts, each with the statutorily created administrative authority to appoint employees and to fix their compensation, within the appropriations provided by the governing entity. In addition to these statutorily created administrative rights, the judiciary also has certain "inherent powers."

## B. *Inherent Powers*

The phrase "inherent powers" is used to refer to powers included within the scope of a court's jurisdiction which a court possesses irrespective of specific grant by constitution or legislation. Such powers can neither be taken away nor abridged by the legislature. But the power a court possesses only by virtue of a statutory grant is not an inherent power. [20 Am Jur 2d, Courts, § 78, p 440.]

One of these inherent powers is

authority to incur and order paid all such expenses as are reasonably necessary for the holding of court and the administration of the duties of courts of justice. [59 ALR3d, § 2, p 574.]

This inherent authority is a judicial power insofar as it is a necessary ancillary to the power of the judicial branch of government. This inherent authority of the court is nonadjudicatory. It does not deal with justiciable matters. It only relates to the administration of the business of the court.

One aspect of the administration of district and circuit courts is the determination of the operational needs of the court and the establishment of a budget to provide for these needs. The power to assess these needs and compel funding for payment of same does not usurp, although it does intrude upon, the power of the legislative branch.

Clearly, however, our constitution has established an independent and coequal judicial branch. It follows, then, that the cost of operating this coequal branch is a legislative expense of state government, for which taxes must be assessed, and with which coequal branches may not interfere. Const 1963, art 9, § 1 and art 5, § 20. If an appropriation is reasonable and necessary to the court's operation, the court has the power to declare its need.

In Michigan, the Supreme Court has long recognized the inherent powers doctrine. In *Stowell v Jackson Co Bd of Supervisors,* 57 Mich 31, 33-34; 23 NW 557 (1885), this Court granted mandamus to compel payment by the county of a hotel bill for a sequestered jury, noting that "the inherent power and duty of courts to exercise their functions must authorize such action as becomes expedient in the course of judicial business." In *Wayne Circuit Judges v Wayne Co,* 383 Mich 10, 26; 172 NW2d 436 (1969), facing a request by the judges for mandamus to compel the appropriation of money for salaries of additional personnel, this Court recognized the inherent power doctrine but restricted its use to apply only to "practical necessities of effectively continuing court functioning." Additional probation officers were not held to fall within this narrow definition. In *Wayne Circuit Judges v Wayne Co (On Rehearing),* 386 Mich 1; 190 NW2d 228 (1971), this Court reversed its earlier decision, expressly quoting language from

*Commonwealth ex rel Carroll v Tate,* 442 Pa 45, 52; 274 A2d 193 (1971):

> "Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a coequal, independent Branch of Government. This principle has long been recognized, not only in this Commonwealth but also throughout the Nation." [*Wayne Circuit Judges, supra,* 9. Emphasis in original.]

Thus, it appears that in addressing fiscal crises and inadequate funding, courts have developed the doctrine of inherent power to compel adequate funding from other branches of government.[4] This theory has its genesis in earlier cases, which invoked the court's inherent power to compel funding for necessary judicial functions, and has grown into a broader assertion of judicial autonomy. See, *e.g., State ex rel Lorig v Bd of Comm'rs,* 52 Ohio St 2d 70; 369 NE2d 1046 (1977); *O'Coin's v Treasurer,* 362 Mass 507; 287 NE2d 608 (1972); *Carroll v Tate, supra, cert den* 402 US 974 (1971); *Conn v Randolph,* 35 Ill 2d 24; 219 NE2d 337 (1966); *Carlson v State,* 247 Ind 631; 220 NE2d 532 (1966); *Smith v Miller,* 153 Colo 35; 384 P2d 738 (1963).

This power is said to originate, and be a necessary concomitant of, the separation of powers doctrine. This power has been stated to be necessary to preserve the integrity and freedom of the judiciary as a coequal branch of government. *Noble Co Council v State ex rel Fifer,* 234 Ind 172; 125

[4] See Note: *The courts' inherent power to compel legislative funding of judicial functions,* 81 Mich L R 1687-1701 (1983); Baar, *Separate but subservient: Court budgeting in the American states,* pp 6-7 (1975).

NE2d 709 (1955). More importantly, it has been said that the power is necessary to preserve for the people *their* security and freedom. The Indiana court said it well as follows:

> A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and the safety of free institutions require the absolute integrity and freedom of action of courts. [*Knox Co Council v State,* 217 Ind 493, 512; 29 NE2d 405 (1940).]

It has been noted that a contrary result would effectively concede to the Legislature the power to destroy the judicial branch.[5]

> A Legislature has the power of life and death over all the Courts and over the entire Judicial system. Unless the Legislature can be compelled by the Courts to provide the money which is reasonably necessary for the proper functioning and administration of the Courts, our entire Judicial system could be extirpated, and the Legislature could make a mockery of our form of Government with its three co-equal branches—the Executive, the Legislative and the Judicial. [*Carroll v Tate, supra,* 57.]

The theory has been almost unanimously accepted in case law throughout the United States. The courts of eighteen states have recognized the inherent power rule and of all states only Alabama does not. The Supreme Court of Alabama rejected the doctrine holding that it is incompati-

---

[5] Conversely, this slight intrusion by the judicial branch into the legislative function does little to weaken the legislative branch. See 81 Mich L R 1688, n 4 *supra.*

ble with a true separation of powers. *Morgan Co Comm v Powell,* 292 Ala 300; 293 So 2d 830 (1974). In so holding, it explicitly rejected *Carroll v Tate, supra,* which the Court viewed as the most sweeping of those decisions supporting the inherent power of the judiciary.

Many courts, while emphatically asserting the inherent power doctrine, have recognized limits on this power, as do I, and have been mindful of the need to exercise it responsibly. *State ex rel Hill v Sullivan,* 48 Mont 320; 137 P 392 (1913); *Wayne Circuit Judges v Wayne Co, supra,* 383 Mich 39, 42-44 (separate opinion by ADAMS, J.); *Leahey v Farrell,* 362 Pa 52, 59-60; 66 A2d 577 (1949).

My analysis of existing authority persuades me that, while the judiciary does have the inherent power to compel reasonable and necessary funding from the county or district control unit, the power is not absolute. Const 1963, art 3, § 2 states:

The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

Because the judiciary and appropriation authority are coequal branches of government, the separation of powers doctrine protects both a board's power over the county funds and the court's power as a judicial entity. The coequal and independent judiciary must possess powers commensurate with its responsibilities and functions which implicitly means the right to protect itself from any attempt to dilute its power. I conclude, however, that current judicial approaches to implementing the inherent power doctrine have not been sufficiently

sensitive to the issues raised as the result of court-funding confrontations.

Because the lines demarking the authority of the branches of government and their respective powers have never been specifically defined, conflicts inevitably arise: the legislative branch wary of any intrusion by the judiciary, the judicial branch wary of any challenge to their independence by the Legislature.

Implicit in the separation of powers doctrine is the concept that one branch of government must not usurp the functions of another branch and conversely no branch's power should go unchecked by another branch. Implicit also in the separation of powers doctrine is the spirit of cooperation among the three branches of government.[6]

For the executive, legislative, and judicial branches to operate smoothly and perform their respective duties effectively, each branch must engage in some activities constitutionally within the province of another branch of government. This crossing over is necessary to the ability of each branch to perform its exclusive function effectively, and thus this "power" that each possesses is incidental, not exclusive. It is when the judiciary exercises an incidental power, rather than its exclusive power, that it must bear the burden of establishing the need for the incidental intrusion into the legislative function. To forbid such a limited intrusion in favor of unlimited legislative discretion would be to so weaken the judicial branch as to destroy it and our tripartite form of government. The "power of the purse" is the exclusive domain of the Legislature, but it is not absolute. It may not be used to divest the court of

---

[6] See *Commonwealth ex rel Carroll v Tate, supra,* 52.

the ability to function independently and effectively.[7]

Thus, in reexamining the constitutional bases of the inherent power doctrine, I am persuaded that, while sound constitutional arguments support the judiciary's implication of the doctrine, the judiciary must bear the burden of articulating the constitutional bases for asserting this power.

It is because of the practical and theoretical problems that court-funding litigation imposes that the judicial branch has agonized in search of principled procedures for minimizing these confrontations and disposing of litigation that cannot otherwise be resolved.[8] Today I seek a procedure that will address the constitutional, political, and practical problems created by the assertion of judicial power to compel appropriations. Historically, the judicial function has been to determine the rights of parties according to the law. Given considered guidelines relative to how to proceed in inherent power disputes, I am confident that the judicial branch will invoke its authority with caution, in a manner that will not place in jeopardy the public's confidence in the integrity of the judiciary.

[7] In *Municipal Court v Bloodgood,* 137 Cal App 3d 29, 36-37; 186 Cal Rptr 807 (1982), the state accounting office identified several consequences of a new austerity budget: (1) consolidation of all municipal court districts, (2) virtual elimination of civil calendars, (3) elimination of small claims court cases, and (4) cutbacks in the criminal misdemeanor calendar, and concluded that if an appropriation results in elimination of basic court functions or an identifiable violation of state law, then budget pressures would replace legal judgments. See 81 Mich L R 1691-1692, n 4 *supra.*

[8] Recognition of the potential threat to the independence of the judiciary, and the inevitable erosion of public trust arising out of these confrontations, has led twenty-seven states to assume responsibility for funding their state courts. See Tobin, *Managing the shift to state court financing,* 7 Just Sys J 70 (1982). See 81 Mich L R 1687-1688, n 4 *supra.* See Gilmore, *The day the Detroit courts ran out of money,* 19 Judges' J 36 (1980).

## C. *Uniform Budgeting and Accounting Act*

Const 1963, art 9, § 1, gives the Legislature authority and requires it to provide by law for maintenance of a uniform accounting system (which requires certain charts of accounts or categories) by units of local government. The Legislature has done this in MCL 141.421 *et seq.;* MSA 5.3228(21) *et seq.* Under this statute, there is now a requirement that a "local unit" of government conform to the uniform accounting procedures manual. The procedures preclude local administrative officers from spending money except as authorized by their boards of commissioners. Also, money may not be transferred from one budgetary account to another without the board's approval. Thus, lump-sum budgetary appropriations are eliminated under the 1978 Uniform Budgeting and Accounting Act. In addition, the act now permits line-item appropriations.

The issue arises in *Cheboygan Co* whether the court is a "local unit" within the meaning of the act, thus subject to line-item appropriations. I conclude that it is not.

"Local unit" is defined in MCL 141.422d(2); MSA 5.3228(22d)(2):

> Except as used in sections 14 to 20a, "local unit" means a village, city, township, or an authority or commission established by a village, city, or township ordinance or charter. As used in section 14 to 20a, "local unit" means any of the following:
> (a) A village.
> (b) A city.
> (c) A local school district.
> (d) An intermediate school district.
> (e) A township.
> (f) A county.
> (g) A county road commission.

(h) An authority or organization of government established by law which may issue obligations pursuant to Act No. 202 ōf the Public Acts of 1943, as amended, and which either may levy a property tax or may expend funds of the authority or organization.

There is no reference in the act to any judicial appropriations or to any judicial units within the state; in particular, trial courts are not mentioned in the act or in its definitional sections. While subsection (2d)(1)(f) specifies that the board of commissioners of a county is the "legislative body," the same section defining "local units" makes no reference to the judiciary.

Therefore, because the district and circuit courts do not come within the parameters of the Uniform Budgeting and Accounting Act, the county board or control unit cannot interfere with a court's inherent and statutory authority by the use of line-item appropriations. In so concluding, I nevertheless urge my judicial colleagues to make a good-faith effort to accommodate their county boards by submitting their court budgets in a manner that will facilitate their boards' compliance with the Uniform Budgeting and Accounting Act requirements.

## D. *Administrative Orders*

Finally, I address the propriety of a court entering an administrative order to compel funding for court operations. MCR 8.112(B).[9] This court rule, as did GCR 1963, 927.2(a), provides that

---

[9] "(B) Administrative Orders.

"(1) A trial court may issue an administrative order governing only internal court management.

"(2) Administrative orders must be sequentially numbered during the calendar year of their issuance. *E.g.,* Recorder's Court Administrative Order 1984-1, 1984-2.

(1) A trial court may issue an administrative order governing only *internal* court management. [Emphasis added.]

In light of the clear language of the court rule, this Court concludes that MCR 8.112(B) provides no authority for a court to compel needed funding by issuing an administrative order. Therefore, I would hold that administrative orders may not be used as a procedure by which the courts exercise their authority to obtain reasonable and necessary appropriations.

## III

### SUMMARY

Thus, to lay a foundation for establishing a procedure for the trial courts of Michigan to compel funding, I would hold that the court has the inherent power to compel funding for reasonable and necessary expenditures for court operations but that this power cannot be broader than the established need which compels its exercise.

I would hold further that the court is not a "local unit" within the parameters of the Uniform Budgeting and Accounting Act; hence, the county has no authority to exercise line-item control over the court's budget.

Finally, I would hold that it is a misuse of the administrative order as provided in MCR 8.112(B) to compel appropriations by issuing such orders.

Having established this foundation, I would hold

"(3) Before its effective date, an administrative order must be sent to the state court administrator. If the state court administrator directs, a trial court shall stay the effective date of an administrative order or shall revoke it. A trial court may submit such an order to the Supreme Court as a local court rule."

that, when accord cannot be reached with the legislative funding authority, the court should initiate suit and bear the burden of proving that its appropriation request is reasonable and necessary to the court's operation. I would caution that to be reasonable and necessary the need must not only be practical rather than relative, but it must be shown that the funds are needed for the effective administration of justice.[10] The trial court's opinion should set forth specific findings of fact, identifying those judicial functions that will be in jeopardy if the appropriation requested is denied, and conclusions of law indicating why the function is required by the constitution.

In so concluding, I reject Hillsdale County's argument that the "serviceability" test is the equivalent of the test for "reasonableness" and is the proper test to be used in appropriation disputes. The theory of a serviceable level of funding, they argue, was adopted by this Court in *Wayne Circuit Judges, supra, 9,* and further defined by the Court of Appeals in *Wayne Co Prosecutor v Wayne Co Bd of Comm'rs,* 93 Mich App 114, 124; 286 NW2d 62 (1979), wherein the Court stated:

> A serviceable level of funding is the minimum budgetary appropriation at which statutorily mandated functions can be fulfilled. A serviceable level is not met when the failure to fund eliminates the function or creates an emergency immediately threatening the existence of the function. A serviceable level is not the optimal level. A function funded at a serviceable level will be carried out in a barely adequate manner, but it will be carried

---

[10] An increasing number of studies of judicial funding and court management have been conducted in recent years. See Hoffman, *Court financing: An overview and assessment,* 7 Just Sys J 6 (1982). These studies can be useful to make comparisons relative to the level of funding in other jurisdictions with the level of funding provided the court in invoking inherent power.

out. A function funded below a serviceable level, however, will not be fulfilled as required by statute.

However, I am persuaded that "serviceability" must be equated with "necessity" and not "reasonableness" as the Hillsdale County Board argued. A serviceable level of funding is a lower level than the reasonable and necessary standard of funding defined in this opinion. A reasonable and necessary standard will provide a court with the means to carry out its constitutionally mandated functions effectively for the people of the State of Michigan.

Furthermore, implicit in this opinion is the conclusion that a court may not institute an original mandamus action to compel appropriations. This opinion requires a court to initiate suit and bear the burden of proving that its funding request is reasonable and necessary. The very fact that what must be proven is the reasonableness and necessity of the expenditure, clearly renders a mandamus proceeding inappropriate. In *Toan v McGinn,* 271 Mich 28; 260 NW 108 (1935), this Court stated that mandamus will not lie to compel performance of a disputed fact, but rather only where there is a plain and clear legal duty. Consequently, a mandamus action should not be used by the judiciary to compel court-requested appropriations.

Finally, I would require that the State Court Administrator assign a circuit court judge to preside over these proceedings. I would require further that these proceedings be completed and an opinion entered within ninety days of the assignment of the circuit court judge. I would provide that, in an appeal from the trial court to the Court of Appeals, the time for taking all steps should be

halved. This includes the time for filing the claim
of appeal; ordering and filing the transcript; filing
the record and briefs and notice of hearing. I
believe that these cases should take precedence
over other cases in being placed on a session
calendar and an opinion should be filed by the
court within ninety days following the date of the
hearing.

I would apply the guidelines and procedures set
forth in this opinion to all cases now pending in
the trial courts or in the Court of Appeals.

## IV

### CONCLUSIONS

Thus, I respectfully dissent.

I would reverse and remand *Employees & Judge
of the Second Judicial Dist v Hillsdale Co,* because
the trial court improperly placed the burden of
proving that the administrative order was unrea-
sonable on the County of Hillsdale.

And, I would vacate Administrative Order 1984-
2 and the pendent contempt proceedings in *Bd of
Comm'rs of Cheboygan Co v Cheboygan Circuit
Judge,* for the reason that the issuance of such an
order was an improper use of MCR 8.112(B).

I would deny Cheboygan County's request for
injunction as moot.

Finally, I would address the remaining issue
raised in *Cheboygan Co* to give guidance to the
trial court in the event of future proceedings.

### ATTORNEY FEES

The procedure outlined in this opinion puts the
burden on the judiciary to prove that requested
appropriations for court operations are reasonable

and necessary. Pursuant to this procedure, a court will need to employ outside counsel to litigate its interests. Invariably, the need for outside counsel will give rise to the issue of attorney fees, as was true in the instant case.

I conclude, first, that the right to attorney fees in inherent power cases cannot arise out of MCL 49.73; MSA 5.826 or MCR 8.110(E).[11] In order for a board of commissioners to pay reasonable attorney fees for representation of a judge under MCL 49.73; MSA 5.826, the judge must be a defendant in a civil matter, exercising an official act or duty of the office.[12] Without addressing all the criteria a

[11] "Sec. 3. The board of commissioners of a county shall employ an attorney to represent elected county officers, including the sheriff, prosecuting attorney, clerk, treasurer, county surveyor, county executive, register of deeds, drain commissioner, mine inspector, public works commissioner, and judges of the county district, probate, and circuit courts in civil matters, as a defendant, when neither the prosecuting attorney or county corporation counsel is able to represent the particular officer. Legal advice, counsel, or court action shall be required under this section only in a case which involves an official act or duty of the office of the county officer. *The attorney shall receive reasonable compensation as shall be determined by the board of commissioners.* This section shall not supersede section 8 of Act No. 170 of the Public Acts of 1964, being section 691.1408 of the Michigan Compiled Laws." MCL 49.73; MSA 5.826. (Emphasis added.)

[12] I acknowledge that in the instant case the matter of attorney fees for Circuit Judge Livo arose following a motion for superintending control filed by the Cheboygan County Board of Commissioners. Thus it is argued that Judge Livo is a defendant in these consolidated proceedings within the language of MCL 49.73; MSA 5.826 and not a plaintiff in an inherent power action by virtue of issuing Administrative Orders 1984-1 and 1984-2. I believe that this is too narrow a view of the nature of these proceedings. Further, it places the issue of the reasonableness of the requested attorney fees before the board of commissioners rather than the trial judge where it belongs. (See emphasized language in n 11.)

In this opinion, I conclude that the court may not issue an administrative order to compel funding but rather must initiate suit to establish that its funding request is reasonable and necessary. A necessary part of that proceeding will be to establish the reasonableness of the requested attorney fees in accordance with the standards set forth in this opinion. Given the fact that this opinion requires that the court initiate suit (thus be a plaintiff), MCL 49.73; MSA 5.826 would never be implicated and it is not applicable in the instant proceeding in light of our treatment of the primary issue.

judge must meet to fall within the purview of this statute, I would dispose of its applicability solely on the "as a defendant" language. Under the procedure set forth in this opinion, the judge of a court who institutes an action to compel the provision of funds for the court's operation will always be a plaintiff, carrying the burden of proof. Thus, a judge initiating inherent power litigation would not qualify for reasonable attorney fees under MCL 49.73; MSA 5.826.

Moreover, a judge will not be able to obtain reasonable attorney fees in these inherent power cases under MCR 8.110(E).[13] While this court rule

---

[13] "(E) Duties and Powers of Chief Judge.

"(1) A chief judge shall act in conformity with the Michigan Court Rules, administrative orders of the Supreme Court, and local court rules, and should freely solicit the advice and suggestions of the other judges.

"(2) As the presiding officer of the court, a chief judge shall:

"(a) call and preside over meetings of the court;

"(b) appoint committees of the court;

"(c) initiate policies concerning the court's internal operations and its position on external matters affecting the court;

"(d) represent the court in its relations with the Supreme Court, other courts, other agencies of government, the bar, the general public, and the news media, and in ceremonial functions; and

"(e) counsel and assist other judges in the performance of their responsibilities.

"(3) As director of the administration of the court, a chief judge shall have administrative superintending power and control over the judges of the court and all court personnel with authority and responsibility to:

"(a) supervise caseload management and monitor disposition of the judicial work of the court;

"(b) direct the apportionment and assignment of the business of the court, subject to the provisions of MCR 8.111;

"(c) determine the hours of the court and the judges; coordinate and determine the number of judges and court personnel required to be present at any one time to perform necessary judicial and administrative work of the court, and require their presence to perform that work;

"(d) supervise the performance of all court personnel, with authority to hire, discipline, or discharge such personnel, with the exception of a judge's secretary and law clerk, if any;

"(e) coordinate judicial and personnel vacations and absences, subject to the provisions of subrule (F);

does state certain duties and powers of a chief judge, it does not grant to the judge, either expressly or by implication, the right to recover reasonable attorney fees when the judge is a party to inherent power litigation.

I conclude, however, that the inherent power of a court includes those powers reasonably required for its practical exercise. Michigan, as well as other jurisdictions, has allowed a court to employ counsel and recover reasonable attorney fees arising out of such inherent power litigation.

In *Wayne Circuit Judges, supra,* 9, this Court ordered, inter alia, that the respective judgments of the circuit court and the Court of Appeals be affirmed. The circuit court, in its decision, had concluded that the judges who brought the mandamus action had the right to employ counsel and recover attorney fees and expenses incurred in connection with the litigation. By affirming the circuit court's decision on this point, this Court endorsed the right to attorney fees in such cases.

In *Young v Bd of Co Comm'rs of Pershing Co,* 91 Nev 52, 55-56; 530 P2d 1203 (1975), the Nevada Supreme Court held that where a district judge was required to employ counsel to institute a mandamus action to compel the county to appro-

"(f) supervise court finances, including financial planning, the preparation and presentation of budgets, and financial reporting;

"(g) request assignments of visiting judges and direct the assignment of matters to the visiting judges;

"(h) effect compliance by the court with all applicable court rules and provisions of the law; and

"(i) perform any act or duty or enter any order necessarily incidental to carrying out the purposes of this rule.

"(4) If a judge does not timely dispose of his or her assigned judicial work or fails or refuses to comply with an order or direction from the chief judge made under this rule, the chief judge shall report the facts to the state court administrator who will, upon the Supreme Court's direction, initiate whatever corrective action is necessary.

"(5) A chief judge may delegate administrative duties to a trial court administrator or others." MCR 8.110(E).

priate certain budgetary requests, the district judge was entitled to reasonable attorney fees.

Finally, the Indiana Supreme Court in *Levco v Auditor of the State,* 271 Ind 415, 418; 393 NE2d 749 (1979), stated in pertinent part:

> [W]here the judge institutes the action in his official capacity, not for his personal pecuniary reward, but for the purpose of meeting the operational needs of the court, a reasonable attorney fee must be paid by the county. *Sullivan Co Council v Hon Brian W Smith* [271 Ind 92; 390 NE2d 645 (1979)].

Thus, I conclude that a court can employ outside counsel and recover reasonable attorney fees in an inherent power controversy. To hold otherwise would impair the inherent power of the court.

In concluding that there is a right to reasonable attorney fees, I conclude also that the standard for determining "reasonableness" is the standard set forth in *Crawley v Schick,* 48 Mich App 728; 211 NW2d 217 (1973), and adopted by this Court in *Wood v DAIIE,* 413 Mich 573; 321 NW2d 653 (1982).[14] The Court of Appeals in *Crawley* held, in pertinent part:

> Where the amount of attorney fees is in dispute each case must be reviewed in light of its own particular facts. There is no precise formula for computing the reasonableness of an attorney's fee. However, among the facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved;

---

[14] In *Liddell v DAIIE,* 102 Mich App 636, 652; 302 NW2d 260 (1981), the *Crawley* factors were applied to the no-fault insurance scheme. MCL 500.3148(1); MSA 24.13148(1).

(4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. See generally 3 Michigan Law and Practice, Attorneys and Counselors, § 44, p 275 and Disciplinary Rule 2-106(B) of the Code of Professional Responsibility and Ethics. [*Crawley, supra,* 737.]

This Court in *Wood, supra,* adopted the six-factor guideline enumerated in *Crawley,* and also affirmed the Court of Appeals decision suggesting that the list was not exhaustive. The *Wood* Court stated:

While a trial court should consider the guidelines of *Crawley,* it is not limited to those factors in making its determination. [*Wood, supra,* 588.][15]

---

[15] Other factors that the trial judge may consider include whether the court involved in the appropriations dispute made any attempt to resolve the conflict short of litigation and, in addition, criteria set forth in Disciplinary Rule 2-106 of the Code of Professional Responsibility in determining the reasonableness of a fee.

"Fees for Legal Services

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent.

Thus, I conclude and would hold that the trial court requesting funding for reasonable and necessary court operations has the burden of proving that the requested attorney fees are reasonable. Moreover, an itemized bill of costs will not be sufficient on its face to establish reasonable attorney fees. *Petterman v Haverhill Farms, Inc,* 125 Mich App 30, 33; 335 NW2d 710 (1983).

Finally, I would adopt the language in *Wood, supra,* 588, to be applied in court appropriation disputes in relation to findings of specific factors and appellate review:

> Further, the trial court need not detail its findings as to each specific factor considered. The award will be upheld unless it appears upon appellate review that the trial court's finding on the "reasonableness" issue was an abuse of discretion.

Thus, I would reverse and remand *Hillsdale* and *Cheboygan* for proceedings consistent with this opinion. And, I would award no costs, a public issue being involved.

WILLIAMS, C.J., and RYAN, J., concurred with RILEY, J.

WILLIAMS, C.J. (*concurring with* RILEY, J.). My signature is appended to, and I fully support, the well-reasoned opinion of Justice RILEY in this matter. I write separately, because, as Chief Justice, I have been intimately involved with the trial courts in their struggles with the problems giving rise to these lawsuits and with the need for guidance in bringing about their resolution. The problems in-

---

"(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee in a divorce case or for representing a defendant in a criminal case." Code of Professional Responsibility, DR 2-106.

volving these parties are unfortunately neither peculiar to them, nor rare and uncommon.

As a consequence, I will review further the origins and status of the problem and the relationship of statutory power and inherent power as a solution for the problem. I do so knowing of the urgent need for understanding to preserve the smooth functioning of our political system of separation of powers. To fail to do so is to put form over substance and to fiddle while Rome burns.

## I. THE UNDERLYING PROBLEM

The 1963 Constitution established one court of justice, and the Legislature, in 1980 PA 438, took the first steps to financially implement that mandate. Act 438 provided for state assumption of court costs for the Wayne Circuit, Detroit Recorder's, and the 36th District Courts. At the same time, the Legislature promised to assume the costs of the courts of the rest of the state. However, for whatever reason, except for partial payment of judges' salaries, the Legislature has not yet fulfilled its promise.

Meanwhile, most state courts and local funding units struggle with the outmoded and inadequate system of local funding of state courts. In some instances, superior statesmanship on both sides or luck and local prosperity have produced harmonious and successful funding of the administration of justice on a viable level. Elsewhere, the judiciary has struggled with inadequate support and understanding. In too many cases, efforts at negotiated resolution of differences have broken down, and the local judiciary in one way or another has sought to enforce compliance with perceived requirements and entitlements.

The ubiquitousness of dissatisfaction and conflict

is illustrated by the fact that on the local level both sides have established training in how to legally and procedurally outmaneuver the other side, while both sides at a different level have endeavored to promote conciliation and compromise in order to avoid such conflict.

The two cases at bar, therefore, are not unique and rare phenomena requiring only individual resolution of two specific differences of opinion. These two cases are merely the first two in an already enlarging pipeline tapping a sea of discontent and conflict.

As a consequence, this Court is called upon not merely to decide between *A* and *B* and *C* and *D,* but to lay down comprehensible guidelines to reasonably regulate the flow of problem solving, with as much understanding and civility and with as little confusion and acrimony as possible. With this in mind, I will consider general principles, their application to the facts, appropriate procedures for future conflict resolution, and guidelines for possible further proceedings in the instant matters.[1]

## II. BASIS FOR STATUTORY POWER

It is absolutely correct that there is a doctrine of statutory power as well as a doctrine of constitutional inherent power. *People v Macomb Co,* 3 Mich 475 (1855); *Sturgis v Allegan Co,* 343 Mich 209; 72 NW2d 56 (1955); *Jail Inmates v Wayne Co Sheriff,* 391 Mich 359; 216 NW2d 910 (1974). These cases indicate that where there is no question either of the clear statutory duty of a governmen-

---

[1] These cases do not present a question involving the authority of a court to negotiate collective bargaining agreements, *Livingston Co v Livingston Circuit Judge,* 393 Mich 265; 225 NW2d 352 (1975). We do not express an opinion on the method by which such controversies shall be resolved.

tal entity to pay an obligation or of the reasonableness of the obligation, the Court will enforce payment of that obligation.

The obligations in the three cited cases were, respectively, costs incurred by a county board of health as required by statute, the salary of a county school superintendent fixed by the education board pursuant to statute, and the costs to provide, as required by statute, a "suitable and sufficient jail." In each case, no question was raised as to the reasonableness of the amount or to the statutory mandate.

The salient principle in the doctrine of statutory power is that the court is not exercising its own discretion, but is enforcing the mandate of the Legislature. As *Allegan* recognized:

> The situation here is that we are dealing with plaintiff's right to collect a salary, not claimed to be unreasonable in amount, *duly fixed in accordance with an act of the legislature.* [343 Mich 217. Emphasis supplied.]

Indeed, in both *Macomb* and *Jail Inmates,* it is emphasized that the Legislature has so well specified what it wants done, that the county has no subordinate legislative power to exercise, but only to carry out the Legislature's mandate in an executive capacity. 3 Mich 478; 391 Mich 364. In other words, the county has no discretion to exercise. It has only to perform the duty to pay imposed by the Legislature. And the court's only function is to enforce that legislative mandate.

### III. BASIS FOR INHERENT POWER

Justice RILEY, in Part II(B) of her opinion, has clearly set out the origins, universal acceptance, and character of the doctrine of inherent power. It

remains therefore in this opinion only to examine and compare the differences in the bases for statutory and inherent power.

In examining the doctrine of *statutory power,* I concluded that "[t]he salient principle in the doctrine of statutory power is that the Court is not exercising its own discretion but is enforcing the mandate of the Legislature." In the cases we examined, the court was ordering the county to pay health bills, a superintendent of education's salary, and jail-improvement costs, all clearly and unequivocally upon the mandate of the Legislature.

In examining the doctrine of *inherent power,* we are dealing with the exercise of a power by a court to protect the court's constitutional position in our tripartite governmental system. See RILEY, J., *ante,* pp 736-737; *Wayne Circuit Judges v Wayne Co (On Rehearing),* 386 Mich 1, 9; 190 NW2d 228 (1971). The basis for the specific exercise of the power may be possessed "irrespective of specific grant by constitution or legislation." 20 Am Jur 2d, Courts, § 78, p 440, quoted by Justice RILEY, *ante,* p 734. Or it may arise because of support of a specific constitutional right, such as the right to trial by jury, *e.g., Stowell v Jackson Co Bd of Supervisors,* 57 Mich 31 (1885) mentioned by Justice RILEY, *ante,* p 735. Likewise, the basis may be constitutional with legislative mandate, as ordering additional personnel in order to administer justice, *Wayne Circuit Judges, supra,* referenced by Justice RILEY, p 735. See also the opinion of Justice LEVIN in *Wayne Circuit Judges v Wayne Co,* 15 Mich App 713, 723; 167 NW2d 337 (1969): "In almost all the cases where the inherent power of the judiciary to direct the appropriation of funds was recognized the court also relied on legislation authorizing the expenditure . . . ."

In short, the basic difference in the foundation
for the exercise of statutory power and for the
exercise of inherent power is that, with respect to
statutory power, the court is enforcing a clear
legislative mandate without employing its own
discretionary judgment, whereas, with respect to
inherent power, the court in its sound constitu-
tional judgment is protecting its position in our
tripartite system of government, usually in order
to properly continue the administration of justice.

## IV. APPLICATION OF ANALYSIS TO INSTANT FACTS

Before turning to the instant facts, it may be
instructive to review the analysis as applied to the
cited Michigan cases. Obviously, in *Macomb, Alle-
gan,* and *Jail Inmates,* the Court was enforcing the
clear legislative mandate to pay bills for Health
Department smallpox services ordered by the Leg-
islature, to pay the salary of a school superinten-
dent fixed in accordance with statute, and also to
pay costs to provide a "suitable and sufficient jail"
per statute. The Court was not protecting its own
constitutional place in government, it was enforc-
ing the Legislature's mandate.

In *Wayne Circuit Judges,* however, the court
was protecting its constitutional role to administer
justice. The court had requested additional person-
nel, over and above the budget appropriated by the
county. The county refused to pay for such person-
nel. The county did not claim such personnel were
not needed nor unreasonable. The county chal-
lenged the right of the court to order the county to
pay for such personnel. 383 Mich 34 (opinion of
BLACK, J.) and 386 Mich 9.

Looking to the instant facts, it is abundantly
apparent that there is no clear statutory mandate

to enforce, and hence statutory power cannot support these actions.

What is the mandate? What are the facts? The mandate is for the funding unit to pay compensation fixed by the court "within appropriations provided." The facts in both *Hillsdale* and *Cheboygan* appear to be that the courts were seeking compensation not "within," but in excess of "appropriations provided." There is no clear mandate because the Legislature ordered payment only when the compensation was "within appropriations provided," and here payment was not "within appropriations provided."

In both cases the records indicate that the courts sought to have items included in the budget which the county specifically excluded. There is nothing in the record to indicate that there were internal budget transfers to provide for compensation for the rejected items. Rather, it would appear that the courts were seeking to compel payment of compensation outside of, and in excess of, the budget.

If there had been lawful budget transfers so that the employee or employees could be paid the court-fixed compensation "within appropriations provided," then statutory power could be used to compel payment if the county refused to pay, because such payment would fall within the Legislature's mandate. The same would be true if another employee with the same compensation retired and was not replaced, because funds from the retired employee would then be available. If, however, the court were seeking to compel the payment of compensation for employees at a higher rate along with all the rest of the budget granted, as in *Hillsdale,* or was seeking to compel the compensation of an additional employee over and above all the other employees and other expenses,

as in *Cheboygan,* then the court would not be enforcing a legislative mandate, and statutory power would not support the action.

At this point, it might be remarked that in *Cheboygan* the county did not refuse to pay the part-time employee in question while there were funds available for such payments and for the rest of the budget presumably. If at that point, while there were yet funds available, the county had refused to pay the part-time employee in issue, then the theory of statutory power would have applied. In fact, however, the county paid until such funds ran out before challenging payment for this employee.

The theory behind this rule is as follows. The phrase, "fix their compensation within appropriations provided" by the governmental unit, is a significant and pregnant statement. On the one hand, it permits judicial appointment of personnel and setting of salaries to be paid by local government under MCL 600.591; MSA 27A.591 and MCL 600.8271; MSA 27A.8271, but, on the other hand, it allows the exercise of that judicial power only within the limitation "within appropriations provided." "[W]ithin appropriations provided" means that the Legislature has delegated to the local unit the *legislative* discretion to determine the maximum appropriation. *Judges of the 74th Judicial Dist v Bay Co,* 385 Mich 710, 726; 190 NW2d 219 (1971). That limitation is of utmost significance. While the local unit of government is generally subordinate to the Legislature's mandate to pay for salaries fixed for personnel appointed by the judiciary, the previously recognized limitation of "within appropriations provided" transforms a purely executive response by local government into an executive response modified by the grant of specific legislative power contained in the limita-

tion "within appropriations provided." In other words, the court has no clear legislative mandate to enforce unless the local governmental unit is refusing to pay compensation "within [the] appropriations provided."

If the local unit of government refused to pay compensation "within appropriations provided," then it might very well be violating the doctrine set forth in *Allegan,* where the county refused to pay the salary of a superintendent of education fixed according to statute and where there was no statutory limitation and no contesting of the reasonableness or need.

In short, in neither *Hillsdale* nor *Cheboygan* is there a clear mandate of the Legislature to enforce. The applicable legislation relates to compensation "within appropriations provided." The applicable facts relate to compensation *not* "within appropriations provided." Therefore, there is no legislative mandate with respect to the facts of *Hillsdale* and *Cheboygan* for the courts to enforce under *statutory power.* If appropriate, enforcement can only be through the exercise of inherent power.

Thus, this construction of "within the appropriations provided" is clear. Justice BRENNAN, in *Judges v Bay Co, supra,* 726, adverted to this fact as follows:

> If, however, the statute means what it says, *i.e.,* that the judges are to fix the compensation of their employees, then it follows that the language "within appropriations" simply means that the judges' statutory power to employ personnel and fix their compensation must be exercised within the overall limits of funds appropriated by the district control unit or units, for the operation and maintenance of the district court.

Furthermore, the comments of Justice ADAMS in his separate opinion in *Wayne Circuit Judges,* 383 Mich 47, are apropos:

> In my view, the Court of Appeals has confused the implementation of inherent power with the exercise of statutory authority. Inherent power, when it is present, needs no statutory implementation. But where a court is proceeding under a statute, it is bound by the statute's terms and conditions. The action taken must conform to the statute and may not be in derogation of that part of the statute which imposes restrictive conditions.