46TH CIRCUIT TRIAL COURT v CRAWFORD COUNTY

Docket Nos. 246823, 248593, 251390. Submitted March 3, 2004, at
  Lansing. Decided April 1, 2004, at 9:15 A.M. Leave to appeal sought.

  The 46th Circuit Trial Court (hereafter the Trial Court) brought an
    action in the Trial Court against Crawford County and the
    Crawford County Board of Commissioners, alleging the failure to
    provide proper funding for the Trial Court, a court constituted by
    the circuit court, district courts, and probate courts in the counties
    of Crawford, Otsego, and Kalkaska. A primary allegation was the
    failure to properly fund a retiree health care and pension benefits
    plan. Crawford County and its board of commissioners answered
    the complaint and filed a countercomplaint for declaratory relief,
    alleging, in part, that the Trial Court exceeded its authority in
    implementing the retiree health care and pension benefits plan.
    Kalkaska County was permitted to intervene as a third-party
    plaintiff and filed a third-party compliant containing allegations
    similar to those filed by the Crawford County defendants. The
    Trial Court then filed a countercomplaint against Kalkaska
    County containing allegations similar to those made in the com-
    plaint against the Crawford County defendants.

    Crawford County and Kalkaska County then filed a separate
    lawsuit in the Trial Court against Otsego County alleging violation
    of the Uniform Budgeting and Accounting Act, MCL 141.421 *et
    seq.*, as a result of Otsego County's participation in the retiree
    health care and pension benefits plan. The actions were consoli-
    dated in the Trial Court and were assigned to a visiting judge,
    Dennis C. Kolenda, J. During the pendency of the matter, the Trial
    Court sought a ruling regarding who was responsible for the Trial
    Court's attorney fees and other expenses in relation to the matter.
    Judge Kolenda (hereafter the lower court) found that the counties
    were responsible for the attorney fees. The lower court entered an
    order providing that each of the three counties was responsible for
    one-third of the attorney fees and expenses and also determining
    that the rates of between $230 and $300 an hour that the Trial
    Court's attorneys sought, rather than the $130 an hour received
    by the attorneys representing the counties, would apply to the
    attorney fee award. The Court of Appeals granted leave to appeal

to Crawford and Kalkaska counties and the Crawford County Board of Commissioners and also granted their motion for a stay of the lower court's order regarding attorney fees. (Docket No. 246823). The lower court then issued two additional orders awarding the Trial Court attorney fees and ordering the three counties to each pay one-third of the amount. The Court of Appeals again granted Crawford and Kalkaska counties and the Crawford County Board of Commissioners leave to appeal from those orders. (Docket Nos. 248593, 251390). The appeals were consolidated.

The Court of Appeals *held*:

1. The statutory obligation of a county board of commissioners to employ counsel to represent its county officials in certain civil matters, as provided in MCL 49.73, is limited to actions in which the official is a named defendant, and does not extend to situations where, as in this matter, judicial proceedings are initiated by a county official. The lower court erred in concluding that MCL 49.73 applied to this matter. The filing of the countersuit and third-party complaint did not render the Trial Court a "defendant" within the meaning of MCL 49.73.

2. The award of attorney fees and expenses was not error. A court has inherent power to take whatever steps are reasonably necessary to fulfill the judicial function, including the employment of outside counsel to litigate its interests. The inherent power doctrine authorizes a court to recover reasonable attorney fees arising out of litigation involving the court's inherent power. The lower court properly concluded that the Trial Court had the inherent power to seek payment by the defendants for the attorney fees incurred in litigating this entire matter.

3. The inherent power doctrine allows a court to require that moneys be spent as reasonably necessary to fund the judicial branch. There are, however, limits to the inherent power doctrine to prevent overstepping into the legislative area of appropriations.

4. The final determination of a "reasonable" attorney fee award is a matter to be resolved by the lower court, not the defendants. In contrast to the usual "reasonableness" case, great caution must be used in this matter to avoid determining fees at too high a level. Due consideration should be given to the fees being charged by other attorneys in the locality for similar legal services. The fees paid by the defendant counties should not be ignored because they provide a specific measure of the compensation reasonably to be paid in this type of litigation and in this locality.

5. The lower court, under the specific facts of this case and considering the inherent power doctrine, failed to give sufficient

consideration to the attorney fees being charged by defense counsel. The lower court did not err in finding that the fee awarded need not be a perfect match of the fees charged by defense counsel and that the determination of a reasonable fee requires more than a simple examination of the hourly rate being charged.

6. The proper procedure to apply in the context of this inherent powers litigation begins with a close examination of the hourly billings to assure that they represent time properly spent prosecuting the inherent power claim on behalf of the judiciary. The lower court should then determine the reasonableness of the hourly fee under the factors adopted in *Wood v DAIIE*, 413 Mich 573 (1982). An "hourly rate limitation" based on defense counsel fees should then be imposed. Specifically, the lower court should compute the fees that would have been incurred if counsel for the plaintiff court had used an hourly rate that was 150 percent of that charged by counsel for the defendants. In addition, the lower court should consider the total fees incurred by the defendants in the aggregate to defend against the claim and set a "total fees limitation" equal to 150 percent of that amount. Attorney fees awarded to the plaintiff court's counsel must then be subject to the limitation that is less restrictive, i.e., that results in a larger award of attorney fees than does the other.

7. The award of attorney fees must be reversed and the matter must be remanded for a proper determination of such fees in accordance with the procedure stated by the Court of Appeals.

8. It was not error to award attorney fees in this matter before the litigation was complete and on the basis of the pleadings and the supporting documentation submitted by the parties, without an evidentiary hearing. The assessment of interest on the award of attorney fees was proper.

Reversed and remanded.

1. COUNTIES — ACTIONS AGAINST COUNTY OFFICIALS — LEGAL COUNSEL.

The statutory obligation of a county board of commissioners to employ counsel to represent a county official in certain civil matters is limited to actions in which the official is named as a defendant and does not extend to situations where the judicial proceedings are initiated by the county official (MCL 49.73).

2. COURTS — CONSTITUTIONAL LAW — SEPARATION OF POWERS — INHERENT POWERS.

A court charged with the responsibility for judicial service receives and accepts with that responsibility the inherent power and duty to take such action as is reasonably necessary to fulfill the

constitutional obligation thus undertaken; such inherent power includes the power to determine and compel payment from its funding unit of those sums of money that are reasonable and necessary to carry out its mandated responsibilities and its powers and duties to administer justice; included within a court's inherent power is the authority to employ outside counsel to litigate its interests and recover reasonable attorney fees arising out of such inherent power litigation.

3. TRIAL — MOTIONS AND ORDERS — ATTORNEY FEES — EVIDENTIARY HEARINGS.

A trial court generally should hold an evidentiary hearing when a party is challenging the reasonableness of the attorney fees requested in an award of attorney fees; an evidentiary hearing is not required where the parties have created a sufficient record to review the issue.

4. COURTS — ATTORNEY FEES — INTEREST.

Interest may be assessed on an award of attorney fees and costs.

*Howard L. Shifman, P.C.* (by *Howard L. Shifman*), and *Kienbaum Opperwall Hardy & Pelton, P.L.C.* (by *Thomas G. Kienbaum* and *Noel D. Massie*) (*Patricia J. Boyle*, of counsel), for the 46th Circuit Trial Court.

*Cohl, Stoker, Toskey & McGlinchey, P.C.* (by *Bonnie G. Toskey*), for Crawford County, Crawford County Board of Commissioners, and Kalkaska County.

*Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.* (by *Christopher J. Johnson*), for Otsego County.

Amicus Curiae:

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *Jana M. Berger*), for Michigan Association of Counties.

Before: SAWYER, P.J., and BANDSTRA and SMOLENSKI, JJ.

BANDSTRA, J. In Docket No. 246823, defendants Kalkaska County, Crawford County, and the Crawford County Board of Commissioners appeal by leave

granted the lower court's February 4, 2003, order declaring that the three counties involved in this case are responsible for the legal expenses of the plaintiff in this matter, the 46th Circuit Trial Court. In Docket Nos. 248593 and 251390, defendants Kalkaska County, Crawford County, and the Crawford County Board of Commissioners appeal by leave granted the lower court's May 21 and September 22, 2003, orders awarding plaintiff attorney fees and costs in the amount of $350,386 and $316,007, respectively. The appeals were consolidated. We reverse and remand.

### I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a funding dispute between the 46th Circuit Trial Court and the three counties—Otsego, Kalkaska, and Crawford—served by that court.[1] The Trial Court is a court constituted by the circuit court, district courts, and probate courts in the three counties, "unified" pursuant to a Supreme Court order. See Administrative Order No. 1996-9. The funding disputes giving rise to this appeal largely arise out of the budgeting changes made as part of the unification process.

During the fall of 2000, as part of their responsibilities as the local funding units for the Trial Court, each of the counties approved funding for implementation of a proposed plan to increase retiree health and income benefits for employees of the Trial Court.[2] However,

---

[1] For ease of reference, the 46th Circuit Trial Court will hereinafter be referred to simply as "the Trial Court." References to "the lower court" are to the visiting judge assigned to preside over this matter.

[2] Since this appeal was filed, the lower court proceedings have proceeded through trial to a verdict in favor of the Trial Court. Although the trial findings may well be appealed, we rely on them to a limited extent for background on issues that do not appear to be in dispute.

approximately one year after the January 2001 implementation of the plan, Kalkaska and Crawford counties formally rescinded their approval of the plan. Although Kalkaska County nonetheless continued to provide its share of the funding for the plan through 2002, Crawford County failed to completely fulfill its funding obligations under the plan and also refused to make the necessary appropriations to fully fund its share of the Trial Court's proposed budget for fiscal years 2001, 2002, and 2003.

In October 2002, the Trial Court filed suit against Crawford County and its board of commissioners under Administrative Order No. 1998-5.[3] In count I of the complaint, the Trial Court alleged that Crawford County had breached an express agreement it had entered with the Trial Court regarding implementation and funding for the new retiree health care and pension benefits plan. Count II of the complaint alleged in the alternative that, even if no such agreement was expressly made, there was an implied contract and Crawford County was estopped from refusing to fund the plan, having already received the benefit of various concessions made by Trial Court employees in exchange for increased benefits under the plan. Counts III and IV of the complaint more generally alleged that Crawford County and its board of commissioners failed to provide sufficient funds to enable the Trial Court to operate during fiscal years 2001, 2002, and 2003.

In addition to answering these charges, Crawford County and the Crawford County Board of Commis-

---

[3] Administrative Order No. 1998-5, § III provides, in relevant part, that a court may file a civil action to compel funding "[i]f, after the local funding unit has made its appropriations, [the] court concludes that the funds provided for its operations by its local funding unit are insufficient to enable the court to properly perform its duties and that legal action is necessary . . . ."

sioners filed a countercomplaint for declaratory relief, alleging that the Trial Court exceeded its authority in implementing the retiree health care and pension benefits plan. Crawford County further alleged that the Trial Court had fraudulently misrepresented the cost of the plan to the local funding units, and that such misrepresentation vitiated any agreement regarding the plan that might otherwise be enforceable. Kalkaska County was permitted to intervene in the suit by filing a third-party complaint containing allegations similar to those filed by the Crawford County defendants in their countersuit against the Trial Court. The Trial Court thereafter filed a countercomplaint against Kalkaska County, which mirrored the claims and allegations made by the Trial Court in its complaint against the Crawford County defendants.

In addition to the countersuit and third-party complaint filed against the Trial Court, Crawford and Kalkaska counties joined in filing a separate suit against Otsego County, in which it was alleged that, as the control unit for the local funding units, Otsego County violated the Uniform Budgeting and Accounting Act, MCL 141.421 *et seq.*, by participating in the implementation of the new retiree health care and pension benefits plan.[4] Following consolidation of the various actions and assignment of a visiting judge to preside over the matter, the parties began litigating the issue of responsibility for the Trial Court's attorney fees and other expenses in relation to this matter.

On February 4, 2003, the lower court granted the Trial Court's motion seeking payment of its attorney fees by the counties, but reserved the determination of the amount of those fees until the Trial Court had

---

[4] Each of the claims in that suit were ultimately either withdrawn by Crawford and Kalkaska counties or dismissed by the lower court.

submitted detailed billing statements.[5] In concluding that the counties were responsible for payment of the Trial Court's attorney fees, the lower court relied, in part, on MCL 49.73, which requires that a county board of commissioners "employ an attorney to represent elected county officers" named "as a defendant" in certain civil matters. In finding the statute applicable here, the lower court reasoned that, because Crawford and Kalkaska counties had filed a countersuit and a third-party complaint against the Trial Court, the Trial Court was a "defendant" within the meaning of MCL 49.73. Alternatively, the lower court found that the Trial Court had inherent power to require the counties to pay attorney fees expended to assure an adequate judicial budget.

Pursuant to this order, the Trial Court submitted billing statements for all attorney fees and expenses incurred by it in relation to this matter before February 1, 2003. Following review of the statements, the lower court concluded that counsel for the Trial Court was entitled to be paid the full amount of the statements, "and not at a rate dictated by [the] . . . counties." Accordingly, in an order dated April 29, 2003, but not entered until May 21, 2003, the lower court approved payment of $350,386 in attorney fees and costs, based on rates of between $230 and $300 an hour. It is not disputed that these rates are well over the rate of $130

---

[5] The February 4, 2003, order granting the Trial Court's motion also provided that the first statement was to include all attorney fees incurred by the Trial Court in relation to this matter before February 1, 2003. Thereafter, billing statements were to be submitted monthly, after which the lower court would review the invoices and any objections, then enter an order determining the amount to be paid. Each of the counties, as the local funding units for the Trial Court, would then be responsible for an equal share of the fees, which was to be paid within thirty days of the entry of the order settling the amount of those fees.

an hour received by counsel for the various counties. The order further provided that the three counties were each responsible for one-third of the attorney fees and expenses.

Defendants Crawford and Kalkaska counties and the Crawford County Board of Commissioners sought leave to appeal from the lower court's February 4, 2003, and May 21, 2003, orders, arguing that the lower court erred in finding the counties responsible for the entirety of the Trial Court's legal fees, that the fees charged by counsel for the Trial Court were unreasonable and unnecessary, and that paying such fees would put the counties in the position of having to suspend or severely cut back on essential public services. On May 23, 2003, this Court granted defendants' application for leave to appeal, as well as a motion for a stay of the lower court's May 21, 2003, order, which stay was to be continued until resolution of the appeal or further order of this Court.

Notwithstanding the stay issued by this Court,[6] the lower court entered, on September 22, 2003, a second order awarding the Trial Court an additional $316,007 for attorney fees and expenses incurred after those covered by the May 21, 2003, order. The lower court again ordered each of the three counties to pay one-third of the amount, and Crawford and Kalkaska counties and the Crawford County Board of Commissioners again sought leave to appeal, which this Court granted after consolidation of these matters. On appeal, defendants Crawford and Kalkaska counties and the Crawford County Board of Commissioners challenge the

---

[6] In light of the fact that we are reversing the September 22, 2003, order on other grounds, we need not consider defendants' arguments that the trial court was without jurisdiction to enter that order.

lower court's award of attorney fees and costs on a number of grounds, each of which is addressed below.[7]

## II. ANALYSIS

### A. ATTORNEY FEES UNDER MCL 49.73

Defendants first argue on appeal that the lower court erred in concluding that MCL 49.73 applies under the facts of this case. Specifically, defendants assert that the statutory obligation of a county board of commissioners to employ counsel to represent its county officials in certain civil matters is limited to actions wherein the official is a named defendant, and does not extend to situations where, as here, judicial proceedings are initiated by a county official. We agree.

Although this Court typically reviews a trial court's decision regarding attorney fees for an abuse of discretion, *Schoensee v Bennett*, 228 Mich App 305, 314; 577 NW2d 915 (1998), the question presented here is one of statutory interpretation that we review de novo, *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 377; 652 NW2d 474 (2002). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature," and "[t]he first step in determining legislative intent is to review the language of the statute itself." *Id.* at 372-373. "If the statute is unambiguous, the Legislature is presumed to have intended the meaning expressed and judicial construction is neither required nor permitted." *Id.* at 373.

MCL 49.73 provides, in relevant part, as follows:

---

[7] Defendants also raise a number of issues not directly related to the award of attorney fees. However, we do not address those matters because they exceed the scope of review permitted by our order granting leave to appeal, which limits the issues on appeal to those "raised in the application and supporting brief."

The board of commissioners of a county shall employ an attorney to represent elected county officers, including the ... judges of the county district, probate, and circuit courts in civil matters, as a defendant, when neither the prosecuting attorney or county corporation counsel is able to represent the particular officer. Legal advice, counsel, or court action shall be required under this section only in a case which involves an official act or duty of the office of the county officer. The attorney shall receive reasonable compensation as shall be determined by the board of commissioners.

We find no ambiguity in the language of the statute. As this Court has previously recognized, MCL 49.73 requires a county board of commissioners to employ attorneys to represent a county officer when the officer "is named as a *defendant,* but contains no language authorizing, let alone requiring, employment of attorneys to represent a county official who initiates an action."[8] *Wayne Co Sheriff v Wayne Co Bd of Comm'rs,* 148 Mich App 702, 711-712; 385 NW2d 267 (1983) (emphasis in original); see also *Seventeenth Dist Probate Court v Gladwin Co Bd of Comm'rs,* 155 Mich App 433, 459; 401 NW2d 50 (1986) (a trial court, as the plaintiff in a court funding action, is not entitled to attorney fees under MCL 49.73).

In finding the statute applicable here, the lower court recognized this limitation but concluded that because the Crawford County defendants had initiated a coun-

[8] We recognize that the 46th Circuit Trial Court is arguably not itself a "county officer" within the plain meaning of MCL 49.73. However, because defendants do not challenge the Trial Court's status in this regard, and considering that there is another basis on which to find the statute inapplicable to this matter, we do not address that matter further. For this same reason, we also decline to address defendants' claim that the lower court erred in failing to determine whether the prosecuting attorney or county corporation counsel were able to represent the Trial Court in these proceedings.

tersuit against the Trial Court, and Kalkaska County had been permitted to intervene as a third-party plaintiff, the Trial Court was nonetheless a "defendant" within the meaning of MCL 49.73. However, as defendants note, the countersuit and third-party complaint at issue here sought only declaratory and injunctive relief in defense of the claims asserted in the suit initiated by the Trial Court, and in fact mirrored many of the original allegations and affirmative defenses found in the Crawford County defendants' answer to the complaint initially filed. Consequently, we agree with defendants that the filing of the countersuit and third-party complaint at issue here did not render the Trial Court a "defendant" within the meaning of MCL 49.73.[9] Nonetheless, as explained below, we do not find the lower court's decision to award the Trial Court attorney fees and expenses to be erroneous.

### B. ATTORNEY FEES UNDER THE DOCTRINE OF INHERENT POWER

In addition to concluding that MCL 49.73 provided authority for the Trial Court to employ counsel at defendants' expense, the lower court here also concluded that such authority arose out of the doctrine of separation of powers and the inherent power granted to courts flowing from it. We agree.

The principles the lower court relied on in this regard have been accepted in Michigan for at least the last thirty-five years. In *Wayne Circuit Judges v Wayne Co*, 383 Mich 10, 33; 172 NW2d 436 (1969) (*Wayne I*), Justice BLACK, with Justice DETHMERS concurring, noted

---

[9] The lower court's rationale might be sustained given a different set of facts, e.g., a countercomplaint raising a substantive cause of action seeking other than declaratory or injunctive relief in defense of the allegations in the original complaint.

the "unanimous" authority that a court charged with the responsibility for judicial service "receives and accepts with that responsibility the inherent power and duty to take such action as is reasonably necessary to fulfil the constitutional obligation thus undertaken." On rehearing two years later, the Supreme Court adopted the BLACK-DETHMERS opinion as the opinion of the Court, noting that it had been "authenticated" by decisions handed down by the supreme courts of Missouri and Pennsylvania:

> In view of the developing strength of the principle of inherent power and duty of the judiciary, called into play as it was by the opinion of Justices DETHMERS and BLACK aforesaid, this Court is constrained on rehearing to adopt that opinion; adding only that the judiciary . . . *must* stand foursquare in support of the constitutional doctrines which, most recently in the [*Commonwealth, ex rel Carroll v Tate*, 442 Pa 45; 274 A2d 193 (1971)] case, were declared. "Must" we have accented, just as the *Tate* Court stressed "must possess" in this terse and pointed summary of constitutional necessity . . . :
>
> "Expressed in other words, the Judiciary *must possess* the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government. This principle has long been recognized not only in this Commonwealth but also throughout our Nation." [*Wayne Circuit Judges v Wayne Co*, 386 Mich 1, 8-9; 190 NW2d 228 (1971) (*Wayne II*), quoting *Tate, supra* at 52.]

A more recent and oft-cited discussion of the inherent power doctrine is found in *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co*, 423 Mich 705; 378 NW2d 744 (1985). The opinion of the majority agreed with the dissenting justices that "an inherent power analysis is implicated when judicial functions are

in jeopardy" and reiterated that the "Court has stood 'foursquare' in support of the constitutional doctrine of inherent power" while concluding that the doctrine was not implicated under the facts of the case at hand. *Id.* at 724.

In a dissent concurred in by two other justices, Justice RILEY noted that, " 'irrespective of specific grant by constitution or legislation,' " the inherent power doctrine supplies " 'authority to incur and order paid all such expenses as are reasonably necessary for the holding of court and the administration of the duties of courts of justice.' " *Id.* at 734 (RILEY, J., dissenting), quoting 20 Am Jur 2d, Courts, § 78, p 440, and 59 ALR3d, § 2, p 574. Justice RILEY explained that

[t]his inherent authority of the court is nonajudicatory. It does not deal with justiciable matters. It only relates to the administration of the business of the court.

One aspect of the administration of district and circuit courts is the determination of the operational needs of the court and the establishment of a budget to provide for these needs. [*Hillsdale, supra* at 734-735.]

It is clear from these and other precedents, see, e.g., *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 299-300; 586 NW2d 894 (1998); *Livingston Co v Livingston Circuit Judge*, 393 Mich 265, 273; 225 NW2d 352 (1975); *Ottawa Co Controller v Ottawa Probate Judge*, 156 Mich App 594, 602-603; 401 NW2d 869 (1986); *Gladwin, supra* at 451-452, that a court has inherent power to take whatever steps are reasonably necessary to fulfill the judicial function. Further, it is clear that this includes the authority to "employ outside counsel to litigate its interests." *Hillsdale, supra* at 747 (RILEY, J., dissenting). Beginning in 1985, see *Hillsdale, supra* at 725-727, our Supreme Court has in effect ratified that authority by issuing a series of administrative

orders specifying the procedures to be used by courts with respect to this kind of litigation. See Administrative Order No. 1998-5, § III. Finally, because "a court will need to employ outside counsel" for such litigation, the inherent power doctrine authorizes a court to recover reasonable attorney fees arising out of such inherent power litigation. *Hillsdale, supra* at 747 (RILEY, J., dissenting).

Defendants do not argue that the Trial Court has no right to recover attorneys fees under the doctrine of inherent power. Instead, defendants argue that attorneys fees recoverable under the doctrine should be limited to those arising out of litigation over portions, but not all, of the Trial Court's complaint. Specifically, defendants argue that the inherent power doctrine applies to count III of the complaint, where the Trial Court sought an increase in general funding allegedly reasonably necessary for court operations,[10] but not counts I and II, which claimed a contract (or implied contract) had been formed between the Trial Court and defendants for the payment of increased retiree health care and pension benefits.

Defendants argue that this limitation flows out of the inherent power doctrine discussed above, without citing any precedent that has imposed this kind of limitation. We acknowledge, see discussion below, that the inherent power precedents require caution to avoid any overstepping into the legislative spending prerogative. However, we conclude that, under the facts of this case, the limitation urged upon us here does not flow out of the inherent power analysis but, to the contrary, would undermine that power.

---

[10] Although this argument would equally apply to count IV of the Trial Court's complaint, defendants do not make that argument.

We reach this conclusion because the alleged contract (or implied contract) regarding the enhanced retiree health care and pension benefits was part and parcel of the dispute regarding the Trial Court's general operating budget. The record here shows that the Trial Court employees had voluntarily agreed to personnel reductions, job reassignments and combinations, wage and benefit structure changes, and other alterations necessary to implement the unification of the court required under Administrative Order No. 1996-9. The challenged retirement health care and pension benefits were proposed as an incentive for and in appreciation of that cooperation, and to assure positive employee morale. Thus, the increased benefits at issue under the contract theories in counts I and II had to be considered together with the more general operating expenditures at issue in count III, to determine whether the amounts in their entirety were "reasonably necessary" for the operation of the newly unified Trial Court. To hold that the right to recover attorney fees should be limited to those arising only out of certain of the counts alleged, in this context, would severely undermine the inherent power the Trial Court has to litigate its budgetary needs.[11]

---

[11] Defendants also argue that the inherent power doctrine was inappropriately applied here, before a determination that the litigation was brought in good faith. The one case defendants cite in support of this proposition, *City of Warren v Dannis*, 136 Mich App 651, 661-662; 357 NW2d 731 (1984), considered an issue totally different than that we face here (a dispute between a city and its treasurer, not involving the inherent power doctrine whatsoever), did so in dictum, and is not precedentially binding on us. MCR 7.215(J)(1). Even if a good-faith limitation on the inherent power doctrine applied, the record here shows nothing to indicate a lack of good faith. To the contrary, the Trial Court initiated these proceedings only after trying to work things out with defendants and otherwise complying with Administrative Order No. 1998-5. Further, following trial, the lower court found the Trial Court's claims to be meritorious. While that result might be overturned on

For the same reason, we reject defendants' arguments that an award of attorney fees and expenses should be limited to those incurred after the complaint was filed and should not extend to those incurred with regard to any appeals arising out of the litigation. Attorney services are generally required before the filing of a complaint and often required when trial litigation results in appellate proceedings. The inherent power doctrine would be severely undermined if the ability to recover attorney fees and expenses did not extend to those necessary services.

Having determined that the lower court properly concluded that the Trial Court had the inherent power to seek payment by defendants for attorney fees incurred in litigating this entire matter, we next turn to defendants' arguments that the fees that were assessed were not reasonable. As previously noted, we generally review reasonable attorney fee determinations under an abuse of discretion standard. *Schoensee, supra.* However, any questions of law that affect the determination are reviewed de novo. *State Treasurer v Abbott,* 468 Mich 143, 148; 660 NW2d 714 (2003).

Apart from Justice RILEY's opinion in *Hillsdale, supra,* further addressed below, there are no precedents from Michigan discussing how to determine the "reasonableness" of attorney fees in this kind of case. However, we find some general guidance in the precedents establishing the inherent power doctrine.

These precedents acknowledge that exercise of this power constitutes a usurpation of the Legislature's appropriation prerogative. Under the Michigan Constitution, the "power of the purse" is ordinarily the domain of the Legislature. See *Hillsdale, supra* at 739

---

appeal, it certainly would still militate against the conclusion that the suit was so frivolous as to have been filed in bad faith.

(RILEY, J., dissenting). The inherent power doctrine is an exception to that rule because it allows a court to require that moneys be spent as reasonably necessary to fund the judicial branch. *Id.* at 739-740. Thus, that power should be used cautiously, to assure that the "intrusion by the judicial branch" is "slight" and therefore "does little to weaken the legislative branch." *Id.* at 737 n 5. "[C]ourts, while emphatically asserting the inherent power doctrine, [recognize] limits on this power . . . and [are] mindful of the need to exercise it responsibly." *Id.* at 738. The power "must be cautiously exercised [and] should pass every test of that guarded control which self-restraint exacts . . . ." *Wayne I, supra* at 33.

Consistent with and in light of these considerations, our Supreme Court has issued a series of administrative orders designed "[t]o guard against all possibility of abuse . . . and to guard for that matter against even the appearance of any such abuse . . . ." *Wayne II, supra* at 9. The administrative order applicable to these proceedings specifies that chief judges of trial courts should work closely with local funding units to resolve funding disputes amicably and authorizes the State Court Administrator to help in resolving impasses. See Administrative Order No. 1998-5, §§ III and IV. Further, the administrative order requires that personnel management policies of the trial courts "must be consistent with the written employment policies of the local funding unit" if at all possible. *Id.* at §§ IV and VI.[12] The

---

[12] In addition, to assure an appropriately limited intrusion into the legislative appropriation function, precedents establish that "the court should . . . bear the burden of proving that its appropriation request is reasonable and necessary to the court's operation," *Hillsdale, supra* at 744 (RILEY, J., dissenting), using a "clear and convincing evidence" standard, *Gladwin, supra* at 453. Defendants do not argue that the lower court misapplied this burden of proof here.

order's goal is to "[structure] more positive relations between chief judges and their funding units in the interest of promoting greater understanding [and] cooperation . . . ." *Judicial Attorneys, supra* at 306.

We also find some guidance in MCL 49.73, which provides that, in cases where county commissions must pay fees associated with defending public officials, the determination of a "reasonable" fee is left to those commissions. For the reasons discussed above we have concluded that this statute is not applicable to provide the Trial Court a claim for attorney fees here. Further, the final determination of the reasonableness question is a matter to be resolved by the lower court, *Hillsdale, supra* at 747 n 12, not defendants. Nonetheless, we must find appropriate limits to the inherent power doctrine, to assure no overstepping, through overspending, into the legislative area of appropriations. With that in mind, we conclude that the statute's guidance on this limited question cannot be completely ignored.

Of similar import is Justice RILEY's discussion of the attorney fees issue in *Hillsdale*. Justice RILEY reasoned that attorney fees are to be reviewed using the six-factor guideline set forth in *Crawley v Schick*, 48 Mich App 728; 211 NW2d 217 (1973), and adopted by the Supreme Court in *Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982):

> "[T]he facts to be taken into consideration in determining the reasonableness of a fee include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." [*Hillsdale, supra* at 750-751 (RILEY, J., dissenting), quoting *Crawley, supra* at 737.]

Justice RILEY further noted that *Wood* adopted the suggestion in *Crawley* that this list was not exhaustive, and made specific reference to " '[t]he fee customarily charged in the locality for similar legal services' " as another factor that may be considered. *Hillsdale, supra* at 751 n 15 (RILEY, J., dissenting), quoting Disciplinary Rule 2-106 of the Code of Professional Responsibility.

On the basis of these authorities, we draw the following conclusions about the determination of a reasonable attorney fee in this context. First, in contrast to the usual "reasonableness" case, great caution must be used here to avoid determining fees at too high a level, the imposition of which would constitute an unwarranted intrusion into the power of the purse reserved to county commissions. Thus, due consideration should be given to the fees being charged by other attorneys in the locality for similar legal services. In this regard, the fees being paid by a defendant county commission should not be ignored because they provide a specific measure of the compensation reasonably to be paid in this type of litigation and in this locality. Approaching the attorney fees question in this fashion advances the goals of cooperation and coordination of benefits between courts and their funding units, as stated in Administrative Order No. 1998-5.

With those considerations in mind, we turn to a review of the lower court's analysis regarding the question of reasonable attorney fees. The lower court addressed this issue in a series of opinions and orders.

Without actually deciding the issue, the lower court reasoned in an opinion issued January 30, 2003, that it would likely "rely upon what I deem to be the reasonable hourly rate for the services performed by lawyers in this community because this is where the litigation is pending . . . . [B]ecause the case is in this area it will be

the fees for comparably experienced lawyers that I will use. And by 'comparably experienced,' I mean comparably experienced in this particular area." Similarly, in a second opinion rendered on March 5, 2003, the lower court stated that "I must defer to the boards of commissioners unless I'm satisfied that the amount they have set [for attorney fees] is palpably unreasonable. And inasmuch as counsel was retained at a certain rate for the counties, it would appear to me that that's probably a reasonable rate, and that I will be obligated to honor that particular rate."

Notwithstanding those pronouncements, after the case had developed further, the lower court adopted a different viewpoint in an order issued on April 29, 2003:

> The undersigned is also now satisfied, after a careful review of the matter, that the hourly rates charged by the Trial Court's several attorneys are reasonable, even though higher than the rates typically commanded by similarly experienced lawyers in Crawford, Kalkaska and Otsego counties and higher than the hourly rates being paid by those counties to the attorneys representing them. First of all, it is unrealistic to expect that local attorneys would be willing to become involved in a major dispute between the court before which they often appear and the counties where they live and work and with which they likely have significant professional interaction. Second, even if local attorneys are willing to represent the Trial Court, it is more credible for outside attorneys to be representing the parties. Third, there were sound reasons for the Trial Court to conclude that representing it would overwhelm local counsel. Furthermore, this Court is satisfied that it is often necessary for counsel in the area served by the Trial Court to involve outside counsel to assist with matters and that it is common practice to pay the latter counsel their standard rates, not the lesser rates charged by local attorneys.

The lower court, finally, provided further reasoning for this approach in an opinion issued September 17, 2003:

> The fees charged by the Trial Court's counsel are not rendered unreasonable by the counties' counsel charging a lesser hourly rate. First, the Trial Court's attorneys and their efforts are worth the rates being charged. That the counties' attorneys are willing to accept a lesser rate does not lessen the quality of either the Trial Court's counsel or their efforts. Second, lawyers who regularly represent municipalities tend to be willing to accept much lesser hourly rates because there are offsetting accommodations. Because county commissioners perceive that the public focuses on hourly rates, not on total billings, it is understood that, so long as rates are kept low, billings will not be scrutinized. As a result, government counsel tend to bill more time. Because their clients review and question time entries, other lawyers record time more selectively. That difference is the incentive for accepting lesser rates.

If this was the usual attorney fees case, we would not conclude that the lower court determination was an abuse of discretion in the sense that "the result is so palpably and grossly violative of fact and logic that it evidences perversity of will or the exercise of passion or bias . . . ." *Schoensee, supra* at 314-315. To the contrary, the lower court gave proper consideration to the factors discussed in *Wood, supra,* as being relevant and applied them to the facts here.[13] Nonetheless, applying the inherent power authorities discussed above, we conclude that the lower court failed to give sufficient

---

[13] This is not to say that we are convinced by the lower court's analysis in all regards. For example, the lower court adduced reasons why local counsel might not be well-suited to represent the Trial Court in this matter. That analysis somewhat missed the mark because defendants themselves were represented by Lansing (not local) counsel and were complaining about the imposition of much higher billing rates from affluent suburban Detroit. Further, contrary to the lower court's reasoning, it would seem that local counsel would not be adverse to representing their local judiciary, thereby probably ingratiating themselves with local

consideration to the attorney fees being charged by
defense counsel. While initially indicating that defense
attorney fees would serve as a guideline for determining
the reasonableness of the Trial Court's attorney fees,
the lower court in its later rulings on the issue instead
came up with reasons to almost completely ignore those
defense attorney fees.

Nonetheless, the reasoning of the lower court on this
difficult issue does provide us some guidance in two
important respects. First, while we do not conclude that
it justifies a complete disregard of defense attorney fees,
the reasoning of the lower court amply demonstrates
why it would be inappropriate to require a perfect
match between defense fees and those available to a
court forced into litigation to secure the budget reason-
ably necessary to fulfill its judicial function. Succinctly
stated, there are simply many reasons why the attorney
fees properly to be charged on each side might legiti-
mately differ. Second, we agree with the lower court in
its conclusion that a simple examination of the hourly
rate being charged on each side is insufficient. Some
consideration must also be given to the total costs for
attorney fees on each side of the litigation because
different billing practices might, in effect, partially
equalize any difference there may be in hourly rates.

With these considerations in mind, we conclude that
the following procedure should be used in determining
the reasonable attorney fees question in the context of
this kind of inherent powers litigation. First, as the
lower court did here, a close examination of the hourly
billings should be made to assure that time billed was
properly spent in prosecuting the inherent power claim

judges and court personnel. Nonetheless, we do not conclude that the
trial court's reasoning or decision in this regard was an "abuse of
discretion" as defined by precedent.

on behalf of the judiciary. Having determined the number of hours appropriately billed, the court should then determine whether the hourly fee charged was reasonable under the usual *Wood* factors. Again, this was properly analyzed by the lower court here.[14]

With reasonable attorney fees thus established, a limitation should be imposed based on defense counsel fees.[15] Specifically, the court should compute the fees that would have been incurred if counsel for the plaintiff court had used an hourly rate that was 150 percent of that charged by counsel for defendants. In addition to this "hourly rate limitation," the trial court should also consider evidence regarding the total fees incurred by defendants in the aggregate to defend against the claim and set a "total fees limitation" equal to 150 percent of that amount. Attorney fees awarded to the plaintiff court's counsel must then be subject to the limitation that is less restrictive, i.e., that results in a larger award of attorney fees than does the other.[16]

---

[14] The limitation we find necessary to impose here, see discussion below, is not based in any way on a conclusion that the fees billed by counsel for the Trial Court were excessive. The lower court's conclusion that the fees requested by plaintiff's counsel were reasonable in this complex case is amply supported by the record.

[15] The limitations discussed here apply to attorney fees, paralegal fees, and other fees associated with the legal representation of a plaintiff court. Other costs associated with prosecuting an inherent power claim should be considered separately to determine their reasonableness using the same criteria as in the ordinary case, without any limitations specific to this kind of case.

[16] As examples, limitations would operate as follows in a case where counsel for defendant funding unit(s) charge $100 an hour and work one hundred hours on the litigation for a total of $10,000 in attorney fees. If defense counsel reasonably charged $200 an hour for fifty hours, the reasonable attorney fees award of $10,000 would not be subject to any limitation. While the hourly rate limitation would result in a cap of $7,500 (fifty hours at a rate of 150 percent of $100), this would not apply because the total fees limitation would allow an award up to $15,000 (150

We are, of course, loath to impose this kind of limitation to a question as case-specific as the determination of appropriate attorney fees. Nonetheless, as we have discussed above, this is an extraordinary kind of case. It presents a dispute between two constitutionally separated branches of our government where one must invade the province of the other. That invasion concerns the power of the purse, probably the most closely guarded and coveted of all powers reserved to the legislative branch. Finally, the inherent power doctrine grants the courts the right to seek reimbursement from local funding units for attorney fees necessary *to bring suit against those same funding units*. We conclude that, to assure some semblance of cooperation and a positive relationship even in these difficult situations, some limitation on the amount of fees reimbursable must be imposed.

The record here does not establish whether the reasonable attorney fees determined by the lower court would be subject to these limitations. As noted earlier, it appears that plaintiff's counsel's hourly rate exceeded 150 percent of that charged by defense counsel. However, the trial court did not clearly make any finding regarding the total fees incurred by defendants in the aggregate. Accordingly, we reverse the award of attorney fees and remand for further consideration of the issue consistent with this opinion.

---

percent of $10,000). If plaintiff's counsel reasonably charged $200 an hour for one hundred hours, the attorney fees award would be limited to $15,000, which is the limitation imposed by both the hourly rate limitation (one hundred hours at a rate of 150 percent of $100) and by the total fees limitation (150 percent of $10,000). If plaintiff court's counsel reasonably charged $300 an hour for fifty hours, the entire $15,000 attorney fees would be awarded; that amount would be allowable because it equals the cap imposed by the total fees limitation (150 percent of $10,000) and the hourly rate limitation, being at the lower amount of $7,500 (fifty hours at a rate of 150 percent of $100), would not apply.

### C. TIMING OF ATTORNEY FEES DECISIONS AND
### FAILURE TO HOLD EVIDENTIARY HEARING

Defendants also argue that the lower court abused its discretion or otherwise erred by refusing to defer an award of attorney fees until litigation was complete, and by failing to conduct an evidentiary hearing regarding the reasonableness and necessity of the attorney fees and expenses charged by counsel for the Trial Court. We disagree.

With respect to the timing of the lower court's award of attorney fees, defendants argue that the automatic stay provisions found in MCR 2.614(A) reflect "the policy of the Michigan judiciary that no party be required to pay any part of a judgment until the opportunity for appellate review has become available."[17] Thus, defendants argue, the lower court's award of attorney fees before completion of litigation and an opportunity for review by this Court was "premature." We find the provisions of MCR 2.614(A) regarding judgments inapposite to the attorney fees award at issue here. We agree with the lower court that counsel for plaintiff cannot be expected to wait for the conclusion of what might well be protracted litigation before receiving any payment for services or expenses. To the extent an award of fees might later be modified, a retroactive adjustment would suffice to address defendants' concerns. In any event, however, this argument is moot. Litigation in this matter is now complete, and the issue of the reasonableness of the attorney fees awarded by the lower court is now properly before us.

---

[17] MCR 2.614(A) grants an automatic stay of execution or other proceedings for the enforcement of a judgment until the expiration of twenty-one days after its entry. This twenty-one-day period coincides with the period in which an appeal to this Court, whether by right or by leave granted, must be taken. See MCR 7.204 and MCR 7.205.

See *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 493; 608 NW2d 531 (2000) ("[a]n issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief").

Moreover, we find no abuse of discretion in the lower court's decision to award the Trial Court's requested attorney fees without first conducting an evidentiary hearing on the matter. See *Bielawski v Bielawski*, 137 Mich App 587, 592-593; 358 NW2d 383 (1984). Defendants are correct that, generally, a trial court should hold an evidentiary hearing when a party is challenging the reasonableness of the attorney fees claimed. *Miller v Meijer, Inc*, 219 Mich App 476, 479; 556 NW2d 890 (1996). However, where the parties have created a sufficient record to review the issue, an evidentiary hearing is not required. See *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 113; 593 NW2d 595 (1999); *Giannetti Bros Constr Co v Pontiac*, 175 Mich App 442, 450; 438 NW2d 313 (1989).

In their brief on appeal, defendants assert that they requested an evidentiary hearing below, but provide no record citation to verify that assertion. See MCR 7.212(C)(7). Our review of the record indicates that, although defendants filed numerous objections regarding the attorney fees requested by the Trial Court, they did not request an evidentiary hearing regarding fees encompassed by the lower court's May 21, 2003, order, and merely made passing reference to the need for an evidentiary hearing regarding only a portion of the fees covered by the lower court's September 22, 2003, order. A party's failure to request an evidentiary hearing on the issue of attorney fees constitutes a forfeiture of the issue. See *Kernen v Homestead Dev Co*, 252 Mich App 689, 691-692; 653 NW2d 634 (2002). Moreover, even if

defendants did request a hearing, the detailed billing statement and accompanying documentation, which included affidavits from the Trial Court's various counsel and extensive briefing from both sides, provided the lower court with a reasonable evidentiary basis to evaluate and decide the attorney fees question. *Head, supra.* Accordingly, we do not conclude that the lower court abused its discretion by deciding the issue solely on the pleadings and supporting documentation submitted by the parties. *Bielawski, supra*; see also *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464, 488-489; 652 NW2d 503 (2002).

Of course, the lower court did not determine whether the limitations which we have above concluded must be considered in this kind of case apply here. Accordingly, we are remanding this matter to the lower court for whatever further fact-finding may be necessary to make that determination. The record is insufficient to establish, and we draw no conclusion regarding, whether an evidentiary hearing will be required on this issue.

### D. ASSESSMENT OF INTEREST AND FEES INCURRED IN CONNECTION WITH OBTAINING PAYMENT

Defendants also argue that the lower court erred in awarding the Trial Court attorney fees incurred in connection with obtaining payment for its legal expenses, and by ordering that all such fees would accrue "interest at the judgment rate" from the date the orders awarding those fees were entered. However, because these issues were not raised before and decided by the trial court, they are not properly preserved for our review. See *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Further, they are without merit. Defendants rely exclusively on *Yurgosky v Commonwealth of Pennsylvania Admin Office of Pennsylva-*

*nia Courts*, 554 Pa 533; 722 A2d 631 (1998), but that precedent is unpersuasive. Although that case also involved a court funding dispute in which the plaintiff court sought payment of legal expenses by its funding unit, the Pennsylvania Supreme Court offered no basis for its stark pronouncement that the award of attorney fees in that case may not include "interest assessed on outstanding bills for legal services [or] attorney's fees generated to obtain payment of bills for legal services . . . ." *Id.* at 545. Additionally, we note that the Michigan Legislature has provided for the assessment of interest on attorney fees and costs. See, generally, MCL 600.6013(6). Finally, we have earlier determined that the inherent power doctrine requires payment of precomplaint and appellate attorney fees and expenses. That same logic applies to attorney fees and expenses incurred to secure payment of inherent power costs from reluctant funding units.

### E. CONCLUSION

The limitations on attorney fees we have outlined must be considered in this inherent power doctrine case. Accordingly, we reverse the lower court orders awarding attorney fees and expenses. We remand for proceedings consistent with this opinion. We retain jurisdiction.